STATE ex rel. SCHRADER v. POLLEY, Secretary of State.

The powers the states have given to the federal government are named in the federal Constitution, and all powers not therein named, either expressly or by implication, are reserved to the people of the states.

The word "Legislature," as used in Const. U. S. art. 1, § 4, providing that the time, place and manner of holding elections for Senators and Representatives shall be prescribed in each state by the Legislature thereof, but that Congress may make or alter such regulations does not mean simply the members who compose the Legislature, but refers to the lawmaking body or power of the state, as established by the state Constitution, and which in this state, under the referendum Const. art. 3, § 1, includes the people, and hence Sess. Laws 1909, c. 223, dividing the state into congressional districts, is subject to the referendum vote of the people the same as any other law passed by the Legislature.

(Opinion filed, June 18, 1910.)

Original application for a writ of mandamus by the State, on the relation of John F. Schrader, against Samuel C. Polley, as Secretary of State. Writ denied.

*Schrader & Lewis,* for relator. *Gaffy & Stevens* and *Cloyd D. Sterling, Asst. Atty. Gen.,* for respondent.

McCOY, J. This is an original proceeding in mandamus instituted by the state of South Dakota, on relation of John F. Schrader, a candidate for nomination for Congress before the primary election held June 7, 1910, against Samuel C. Polley, as Secretary of the State of South Dakota. The relator in his petition, alleges his qualifications as to citizenship, etc.; that he is a Republican and has procured sufficient names to a nominating petition to entitle such petition to be filed as a candidate for the Second congressional district, under chapter 223, Laws of 1909; and that the defendant, upon the presentation of such petition, refused to file the same, and an alternative writ was issued, requiring the defendant to show cause before the court why such petition should not be filed. The defendant appeared and made answer and alleged that after the passage and approval of said chapter 223, Laws 1909, and within the time prescribed by law, a sufficient referendum petition, under section 1, art. 3, Const. S. D., and laws enacted pursuant thereto, was filed in the office of the Secretary of State referring the said chapter 223 to a vote of the people, and in the meantime, until such vote is taken, suspending the operation and effect of said chapter 223, and that by reason of the filing of such referendum petition the said chapter 223 is not now a valid and existing law. To this answer the relator demurred on the

ground that it did not contain a statement of facts sufficient to constitute a defense to his petition.

Chapter 223, Laws 1909, provides for and divides the state into two congressional districts. This enactment was approved March 8, 1909. Section 1, art. 3, of the state Constitution, reads as follows: "The legislative power shall be vested in a Legislature which shall consist of a Senate and a House of Representatives. Except that the people expressly reserve to themselves the right to propose measures, which measures the Legislature shall enact and submit to a vote of the electors of the state, and also the right to require that any of the laws which the Legislature may have enacted shall be submitted to a vote of the electors of the state before going into effect (except such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions). Provided that not more than five per centum of the qualified electors of the state shall be required to invoke either the initiative or the referendum." Section 4, art. 1, of the United States Constitution, reads as follows: The times, place, and manner of holding elections for senators and representatives shall be prescribed in each state by the Legislature thereof, but the Congress may at any time by law make or alter such regulations, except as to the place of choosing Senators."

The contention of the defendant is that chapter 223, Laws 1909, is in all things the same as any other law; that it is subject to the same constitutional limitations, as to the manner of passage, and approval, veto, and referendum, as any other law that may be passed by the Legislature. While, on the other hand, the relator contends that under section 4, art. 1, Const. U. S., the Legislature only is authorized and empowered to act in the creation of congressional districts; that the Governor has no veto power, nor the people any referendum power, under the state Constitution, over such action of the members of the Legislature, and, when a majority of the members of the Legislature consent and vote to divide the state into congressional districts, the Governor has no veto power over such action; and that such action is not subject to referendum vote of the people, under the power reserved in the

people, over the passage of laws, by section 1, art. 3, Const. S. D., on the theory that the Governor, who exercises the veto power, and the people, who exercise the referendum power, are not a part of the Legislature, and because the power granted by the United States Constitution says that the time, place, and manner of holding elections for Representatives in Congress shall be prescribed in each state by the Legislature thereof. It is the contention of the relator that, when the federal Constitution gave power to the "Legislature," this power so given could not be delegated to the people.

In these contentions we are of the opinion that the defendant is in the right. In the first place, we are of the opinion that no power to divide the state into congressional districts was ever delegated to the Legislature of the state by section 4, art. 1, of the federal Constitution. That the original source of all sovereign power is in the state. The powers the states have given to the federal government are named in the federal Constitution, and all powers not therein named, either expressly or by implication, are reserved to the people of the state in their sovereign capacity, and such powers reserved by the people can only be exercised by the government upon further grant from the people of the state. U. S. v. Williams, 194 U. S. 295, 24 Supt. Ct. 719, 48 L. Ed. 979. It is a familiar rule of construction of the Constitution of the Union that the sovereign powers vested in the state governments, by their respective Constitutions, remain unaltered and unimpaired, except so far as they were granted to the government of the United States. That the intention of the framers of the Constitution in this respect might not be misunderstood, this rule of interpretation is expressly declared in the tenth amendment to the federal Constitution, namely, "the powers not delegated to the United States are reserved to the states respectively or to the people." The government of the United States, therefore, can claim no powers which are not granted to it by the Constitution, and the powers actually granted must be such as are expressly given, or given by necessary implication. Collector v. Day, 11 Wall. 124, 20 L. Ed. 122. Therefore, when the federal Constitution said: "The times, place and manner of holding elections

for Representatives shall be prescribed in each state by the Legislature thereof, but the Congress may at any time by law make or alter such regulation"—power was not delegated to the state Legislature or to the state itself to regulate such elections, because the state already in its sovereign capacity possessed that power, and the federal Constitution simply left that power with the state, where it already reposed; but, for a purpose, power was delegated to Congress to at any time by law make or alter the time, place, and manner of holding such elections prescribed by the state. "In determining the proper construction to be placed on this clause of the federal Constitution, it is important to inquire, first, What was the object of the framers of that instrument in grafting into it such a provision? Why was it deemed necessary and proper? It is hardly possible that there can be two opinions in regard to this. The convention had provided for a federal Senate and House of Representatives, in which the legislatve power of the proposed government was to reside. The effective organization and continuance of these bodies was necessary to the very existence of the government under the plan proposed. To have a Senate and House of Representatives it was necessary that members thereof must be elected at regular and stated periods; and it was argued with great force that a majority of the state, becoming refractory, might, by the simple act of refusing to provide the times, places, and manner of holding elections for Senators and Representatives, and thereby defeat the election of these officers, suspend the action, destroy the power, and even blot out the existence of the federal government. It became necessary, therefore—absolutely necessary—to secure the continued existence and effectiveness of the federal government, to reserve to Congress the power at any time by law to make or alter such regulations. The object was to secure to the federal government, for its own safety, the due election of these officers—not to confer upon the states, or any department thereof, any powers whatever, or to interfere in any way with them in their mode of electing these officers, as long as the exercise of this power was left to the states. The object manifestly was simply to leave to the states the power to determine the times, places, and manner of holding these elections,

until Congress saw proper to exercise the powers conferred upon it for that purpose." Baldwin v. Trowbridge, 2 Bart. Contested El. Cas. 46. It will be observed that Congress has no power to pass an act providing what any state shall do in regard to such elections, but Congress itself may prescribe the time, place, and manner of holding such elections, and when Congress does so act the law of the state stands aside, but until Congress does so act the state, in its sovereign capacity, acting under its own Constitution, may regulate such elections.

We are also of the opinion that the word "Legislature," as used in section 4, art. 1, of the federal Constitution, does not mean simply the members who compose the Legislature, acting in some ministerial capacity, but refers to and means the lawmaking body or power of the state, as established by the state Constitution, and which includes the whole constitutional lawmaking machinery of the state. State governments are divided into executive, legislative, and judicial departments, and the federal Constitution refers to the "Legislature" in the sense of its being the legislative department of the state, whether it is denominated a Legislature, General Assembly, or by some other name. Under section 1, art. 3, of the state Constitution, it will be observed, the people of this state have reserved to themselves, as a part of the lawmaking power, the right to vote by referendum, upon any law passed by the Legislature, with certain specified exceptions, prior to the going into effect of such law. That the exceptions mentioned are "such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government or its existing state institutions." It is clear that said chapter 223 is not within any of these exceptions. Under the Constitution of this state, the people, by means of the initiative and referendum, are a part and parcel of the lawmaking power of this state, and the Legislature is only empowered to act, in accordance with the will of the people as expressed by the vote, when the referendum is properly put in operation. The term "Legislature" has a restricted meaning which only applies to the membership thereof, and it also has a general meaning which applies to that body of persons within a state clothed with authority

to make the laws (Bouvier's Law Dic.; Webster's Dic.; 18 Am. & Eng. Ency. 822; 25 Cyc. 182), and which, in this state, under section 1, art. 3, Const. S. D., includes the people. Therefore we are of the opinion that in the passage of this act dividing the state into two congressional districts, by the lawmaking power of this state, it was necessary that such law be passed according to the constitutional provisions of this state, and that the referendum was applicable thereto.

We have been unable to find a precisely similar case involving the referendum provision of a state Constitution similar to ours. About the only jurisdiction where similar questions have arisen in relation to elections mentioned in this section of the federal Constitution is before the election committee in the lower house of Congress. In Farlee v. Runk, 1 Bart. Contested El. Cas. 87, it was held that, where there was a conflict between the state Constitution and an act of the Legislature in regard to the place of voting for representatives in Congress, the provisions of the Constitution were binding. In Shiel v. Thayer, 2 Bart. Contested El. Cas. 349, it was held that where the Oregon state Constitution fixed the time for holding an election for Representatives in Congress, and the Legislature fixed another time, the time fixed by the Constitution must govern; that the constitutional provision had placed it beyond the power of the Legislature to change the time of holding such elections. In Baldwin v. Trowbridge, 2 Bart. Contested El. Cas. 46, the minority report in presenting the legal side of the controversy shows the following pertinent language which meets with our approval: "But it was argued that this power was by express terms left, not to the states simply, but to the Legislatures thereof, and that this is such a limitation upon the people of the states that they have now power to restrict their Legislatures in the exercise of this right, conferred upon them by the federal Constitution; but I submit, with all due respect, that not only the history and object of the section under consideration, but the proper definition of the term 'Legislature,' as therein used, show the fallacy of this construction. The 'Legislature' of the state, in its fullest and broadest sense, signifies that body in which all the legislative power of a state reside, and that body is the people themselves,

who exercise the elective franchise, and upon their power of legislation there is no limitation or restriction, except such as may be found in the federal Constitution, or such as they themselves may provide by the organic law of the state. When they assemble in convention, which in large communities is from necessity done by the agency of delegates or representatives of the people, the whole legislative power of the state is then vested in such convention. It can abolish, or in whole or in part abrogate, the proceedings of 'the General Assembly,' or 'Legislative Council,' or 'General Court,' or whatever may be the designation of that subordinate body in which is usually lodged a portion or residuum of the legislative power of a state. Indeed, the people of a state might provide for the periodical assembling of their convention, which would exercise and perform all legislative powers and duties without the intervention of that body of limited and restricted powers, popularly called a 'Legislature,' but which in the Constitutions of most of the states is called by some other name. It is variously designated a 'General Assembly,' a 'Legislative Council,' a 'General Court,' and the like, and is nowhere understood to hold in its grasp all the legislative powers of a state. In Missouri, during the late rebellion, the state convention continued its existence for years, performing all the ordinary acts of legislation, and its power to do so is not questioned. That that was a 'Legislature' within the sense of the term as it is used in this clause of the federal Constitution will hardly be controverted; and, indeed, every state convention called by the people to determine the form of government, or the powers and duties of the various officers thereby created, is a Legislature, and performs many of the ordinary acts of legislation. Indeed, it is the Legislature par excellence of the state, and that other body usually created by it, whether called a 'General Assembly,' 'General Court,' or otherwise, is the creature of this paramount Legislature, and is liable to be modified or annihilated whenever this 'Legislature'—the convention of a state—shall again assemble. The secondary or subordinate body is the creature of the organic law of the state, owes its existence to it, and can rightly do nothing in contravention of its provisions. If, then, this section of the

federal Constitution can be construed to refer to this secondary or subordinate legislative body of a state, it must be held to mean that the time, place, and manner for holding elections for representatives shall be prescribed in each state by the Legislature thereof; such Legislature acting in subordination and in conformity to that organic law to which it owes its own existence. If the state Constitution has fixed no limitation, the power of the Legislature is ample and complete. But if the Constitution has fixed limits, the Legislature cannot transcend them, but must act within the limits prescribed, and if it goes beyond them its action is to that extent absolutely void.".

While we are aware that contested congressional election cases are not always decided from a judicial standpoint, and have not the weight in courts accorded to well-considered judicial opinions, still we are also mindful of the fact that the congressional election committee has at all times had among its number some of the best legal talent of our country, and we do not hesitate to accept the legal principles advanced by such election committee where they appear to be based on logical reason.

The demurrer to the answer may be overruled, and judgment entered in favor of defendant dismissing the petition upon its merits, and the peremptory writ of mandamus denied.