## No. 23862

Brownbriar Enterprises, Inc., a Colorado corporation, and Greenbriar Enterprises, Inc., a Colorado corporation v. City and County of Denver, a Municipal Corporation of the State of Colorado, and Cherry Creek Valley Water and Sanitation District, a Quasi-Municipal corporation of the State of Colorado

(493 P.2d 352)

Decided January 31, 1972.        Rehearing denied February 22, 1972.

Francis R. Salazar, Bailey Belfor, Norman E. Berman, for plaintiffs in error.

Max P. Zall, City Attorney, James H. Snyder, Assistant, Gerald Himelgrin, Assistant, for defendant in error City and County of Denver.

Wallace and Hahn, David J. Hahn, for defendant in error Cherry Creek Valley Water and Sanitation District.

*In Department.*

Opinion by MR. JUSTICE LEE.

This writ of error is directed to a declaratory judgment entered by the District Court of the City and County of Denver requiring plaintiffs in error to pay to Cherry Creek Valley Water and Sanitation District charges for use of sanitary sewer facilities constructed and owned by the district. We find no error and therefore affirm the judgment.

Cherry Creek was organized pursuant to C.R.S. 1963, 89-5-1 *et seq.* It constructed sewer trunk lines and outfall lines which were connected to the sanitary sewer facilities of the City of Denver pursuant to a Connector's Agreement dated December 29, 1961. This agreement spelled out the terms and conditions by which Cherry Creek would be permitted to tie into the Denver sanitary sewer system for discharge and treatment of sewage from the users within the Cherry Creek district into the Denver system. Extensive control and supervision was vested in Denver over the construction, operation and expansion of the Cherry Creek facilities. In particular, the agreement required that the district should construct trunk sanitary sewer lines with sufficient capacity to serve the "total area tributary to the facility" and that the district might recover the cost for construction of "oversize trunk facilities," according to an acreage formula, from areas not within the Cherry Creek district.

Because of misunderstandings between Cherry Creek and Denver concerning the proper implementation of the Connector's Agreement, a Supplemental Agreement, dated March 22, 1965, was entered into which modified and clarified the Connector's Agreement. The controversy here involved the proper interpretation and applicability of these agreements to property being developed by plaintiffs in error, Brownbriar

Enterprises, Inc. and Greenbriar Enterprises, Inc., to whom we refer hereinafter as the "developers."

At the time of the formation of the district, certain areas included within the outer boundaries of the district were excluded therefrom and such areas were not a part of the district or subject to district taxation for capital or operational costs.

Prior to the execution of the Supplemental Agreement, the developers purchased a parcel of land located within one of those "excluded" areas. This parcel with which we are concerned consisted of 9.48 acres. It was annexed to Denver and was platted by the developers as Park Forest, Filing No. 1, which consisted of thirty-six homesites. These homesites were served by sewage collection lines installed in the subdivision streets which were tied into a lateral running north on Dayton Street which connected with Cherry Creek's "B" Outfall line, into which sewage would flow and eventually into the Denver system. These lines serving the subdivision were installed at the sole expense of the developers.

Agreement could not be reached on the amount of the acreage fee chargeable for connection of the developers' line with the district's "B" Outfall line. Cherry Creek then filed a lien statement with the clerk and recorder which prevented further sale of sites. This declaratory judgment action was thereafter commenced. By stipulation the developers deposited $5,250 into the registry of the court and the lien against the property was released by Cherry Creek, the deposit to apply to any judgment in favor of Cherry Creek.

It was the developers' claim that no fees whatsoever were owing by them inasmuch as their land had been annexed to Denver, which did not impose acreage charges upon property owners desiring sewer service on Denver's system. If, however, a fee were owing Cherry Creek, then the amount was properly determined by paragraph 6 of the Supplemental Agreement, which provided for a fee of $247.05 per acre of land to be served. They had tendered such an amount to the district, which was refused.

Cherry Creek, on the other hand, claimed the acreage fee was determined by paragraph 5 of the Supplemental Agreement, which provided:

"5. *Overall Acreage Fee:* The overall acreage fee, based on a total cost paid by the District for all Sewer lines to date and 3,662.7 acres net area in the District as shown on the chart is $508.60 per acre. This fee will be recalculated for every additional 160 acres which are served through the District's sewer system."

Paragraph 7 of the Supplemental Agreement provides:

"7. *Tap Fees and Taxes:* For areas within the District, tap fees and taxes will be charged by the District the same as in the balance of the District in areas not within the City whether or not lines are extended. *For exclusions,* as shown on the map, *the acreage fee listed in 5. above would apply,* which fee would be paid to the District before taps are made or lines extended, with areas being computed to the centerline of the bordering street or streets. No tap fees or taxes will be charged within these excluded areas, however." (Emphasis added.)

The trial court held that paragraph 5, which required payment of $508.60 per acre, controlled the amount to be charged the developers, as adjusted for the excess density existing in Park Forest Filing, No. 1, as required by paragraph 9 of the Supplemental Agreement, which provides:

"9. *Density — Capacity of Lines:* The acreage fees in 5. and 6. above have been computed for a normal density of areas not exceeding three (3) families or living units per acre. For any area, within the City or not, served by the 'A', 'B', or 'C' outfall sewer line which exceeds this density and therefore uses additional capacity of the particular outfall sewer line, the acreage fees in 5. and 6. above shall be increased in the proportionate amount that the density or line usage is increased.* * *"

Judgment was entered in favor of Cherry Creek for the amount deposited in the registry of the court, $5,250, plus an additional amount of $837.87 for the excess density adjustment.

■ The trial court correctly interpreted the agreements between Denver and Cherry Creek and properly applied the terms thereof to the developers' subdivision.

■ It is fundamental that Cherry Creek, a quasi-municipality (C.R.S. 1963, 89-5-7(7)), is not obligated to serve persons outside its district boundaries, but it may do so (C.R.S. 1963, 139-52-2(3)), as it agreed here to do by its contracts with Denver. Express statutory authority permitted it to impose rates, tolls or charges for use of its facilities (C.R.S. 1963, 89-5-13); and to collect in advance charges for the direct or indirect connection with its facilities (C.R.S. 1963, 139-52-2(7)), as was done here.

■ The developers claim that since their land was annexed to Denver prior to the date of the Supplemental Agreement it could not be applicable to their land and they were entitled to sewer service on the same basis as other Denver residents. This might be true had they sought connection to the Denver facilities. Here, they connected with Cherry Creek facilities and were not charged by Denver, but by the district, which clearly had the authority to so do. The statute expressly authorizes the operation and maintenance of sewer district facilities in another municipality when consent of the latter has been obtained. C.R.S. 1963, 139-52-2(3). Here, this was permitted by the contracts between Denver and Cherry Creek. We find no merit to this claim.

■ The further claim of the developers — that in any event the court applied the wrong provision of the Supplemental Agreement — disregards the plain language of the contract. They contend that paragraph 6 of the agreement limited the acreage fee that could be imposed on their land to $247.05 per acre. This provision, by its express terms, relates to "areas outside of the district boundary, using only an outfall sewer line." The developers' track lay within the district boundary and not "outside of the district boundary," as shown by Exhibit A, the official map of the district. Thus, it did not fall within the classification of land to which paragraph 6 of the agreement related. As heretofore noted,

the court correctly applied the provisions of paragraphs 5 and 7 of the agreement to the developers' land. We find no merit to this claim or to the other arguments advanced by the developers.

The judgment is affirmed.

MR. JUSTICE DAY, MR. JUSTICE KELLEY and MR. JUSTICE ERICKSON concur.