1998 SD 42

**Melva J. BEALS, Petitioner
and Appellant,**

v.

**PICKEREL LAKE SANITARY DIS-
TRICT, a Political Subdivision of the
State of South Dakota, James Porter, Al
Svare and Richard Beals, in their capac-
ity as Trustees, Appellees.**

**No. 20161.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 18, 1998.

Decided April 29, 1998.

William E. Coester, Milbank, for Petitioner and Appellant.

Jerome B. Lammers of Lammers, Lammers & Kleibacker, Madison, for Appellees.

MILLER, Chief Justice.

[¶ 1] Pickerel Lake Sanitary District enacted a resolution accepting the low bid of Dahme Construction Company to construct a sewer project within its boundaries. Melva Beals, a local resident, was opposed to the resolution and circulated referendum petitions seeking to place the decision to a vote of the electorate. The petitions were rejected by District. Beals sought a writ of mandamus to require District to set a referendum election. The circuit court denied the writ and Beals appeals. We affirm.

## FACTS

[¶ 2] Pickerel Lake Sanitary District was incorporated by the Day County Commissioners in 1993. Since its inception, District has been preparing to construct a sewer project within its boundaries.

[¶ 3] After passing resolutions pertaining to financing of the sewer project, District opened bids on February 15, 1997, for the construction of Phase I of the project. Dahme Construction Company submitted the low bid, but because District was unsure of its own finances the meeting was adjourned until March 29, 1997.

[¶ 4] When the meeting was reconvened on March 29, a resolution was adopted awarding the construction of Phase I to Dahme, based upon its low bid of approximately $1,194,000. Two of the three trustees of District voted in favor of the resolution. Construction on the project commenced two days later.

[¶ 5] Beals was opposed to the resolution and subsequently circulated a referendum petition to request referral of the resolution accepting Dahme's bid to the electorate. She obtained the signatures of twenty-seven registered voters within the district, thus meeting the statutory requirements for such petitions. The petition was sent to District's clerk on April 24, 1997, and the trustees were so notified. At a subsequent District meeting, a motion was made that the referendum petitions be rejected and, once again, two trustees voted in favor and one was opposed.

[¶ 6] On May 30, 1997, Beals sought a writ of mandamus from the circuit court attempting to require District's trustees to set a referendum election as requested in the petition. The circuit court denied the writ. Beals appeals, claiming that Article III, § 1, of the South Dakota Constitution applies to sanitary districts and that SDCL 9–1–1(6), which defines "municipal corporation" and "municipality," is unconstitutional. We affirm.

## STANDARD OF REVIEW

[¶ 7] The proper construction to be given to a provision of our constitution is a question of law and is, therefore, reviewed de novo. *Kyllo v. Panzer,* 535 N.W.2d 896, 897 (S.D.1995) (citing *Poppen v. Walker,* 520 N.W.2d 238, 241 (S.D.1994); *Dahl v. Sittner,* 474 N.W.2d 897, 899 (S.D.1991)). Review of the constitutionality of a statute is also de novo. *Id.* at 897–98 (citing *Brown v. Egan Consol. Sch. Dist. 50–2,* 449 N.W.2d 259, 260 (S.D.1989)).

[¶ 8] It is settled law that there is a strong presumption that a statute is constitutional and the party challenging the constitutionality of a statute has the burden of proving beyond a reasonable doubt that the statute is unconstitutional. *Id.* at 898 (citing *Specht v. City of Sioux Falls,* 526 N.W.2d 727, 729 (S.D.1995)).

## DECISION

[¶ 9] **1. Whether Article III, § 1, of the South Dakota Constitution applies to sanitary districts.**

[¶ 10] **2. Whether SDCL 9–1–1(6) is an unconstitutional restraint on the ability to submit a sanitary district's resolution to the initiative and referendum process.**

[¶ 11] Because both of Beals' arguments are so interrelated, they will be considered together.[1]

[¶ 12] Beals argues that Article III, § 1, of the South Dakota Constitution contemplates and permits decisions of District to be subject to the initiative and referendum processes. That section of our constitution provides:

The legislative power of the state shall be vested in a Legislature which shall consist of a senate and house of representatives. However, the people expressly reserve to themselves the right to propose measures, which shall be submitted to a vote of the electors of the state, and also the right to require that any laws which the Legislature may have enacted shall be submitted to a vote of the electors of the state before going into effect, except such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions[.]

... *This section shall apply to municipalities.* ... (Emphasis added.)

Beals argues District should be considered a "municipality" or a "municipal corporation."

[¶ 13] There are many general definitions of a "municipality" or a "municipal corporation."

A municipal corporation is a body politic created by organizing the inhabitants of a prescribed area, under the authority of the legislature, into a corporation with all the usual attributes of a corporate entity, but endowed with a public character by virtue of having been invested by the legislature with subordinate legislative powers to administer local and internal affairs of the community, and by virtue of its creation as a branch or agency of the state government to assist in the administration of the government of the state. Another definition of a municipal corporation is that it is the body politic and corporate constituted by the incorporation of the inhabitants of a city, town, or village for the purposes of the local government thereof.

56 Am.Jur.2d *Municipal Corporations, Counties, and Other Political Subdivisions* § 4 (2dEd. 1971). Black's Law Dictionary has a similar definition for "municipality." It defines that term as:

A legally incorporated or duly authorized association of inhabitants of limited area for local governmental or other public purposes. A body politic created by the incorporation of the people of a prescribed locality invested with subordinate powers of legislation to assist in the civil government of the state and to regulate and administer local and internal affairs of the community.... A city, borough, town, township, or village.

Black's Law Dictionary 1018 (6thEd. 1990) (citation omitted).

[¶ 14] A "district" is typically considered to be something less than a municipality, as it is created and organized by the legislature and given certain limited powers

---

1. The special writing states that this case can be decided on different grounds and the constitutional issue should be avoided. However, this case cannot be decided on other grounds. Beals raised two issues on appeal: 1) Whether Article III, § 1, applies to sanitary districts; and 2) whether SDCL 9–1–1(6) is unconstitutional. The first time the issue of whether accepting the bid was an administrative act was mentioned was in District's brief. It was submitted as an alternative argument should this Court find that Article III, § 1, does apply to sanitary districts. District did not file a notice of review on this issue so it is not properly before us. *See Zoss v. United Bldg. Ctrs., Inc.*, 1997 SD 93, ¶ 20, 566 N.W.2d 840, 846 (holding, "[w]e have consistently held ... that failure to timely file a notice of review constitutes a waiver."); *State v. Vandergrift*, 1997 SD 5, ¶ 8, 558 N.W.2d 862, 864 (declining to consider an issue raised by appellee because no notice of review was filed); *Hisgen v. Hisgen*, 1996 SD 122, ¶ 11, 554 N.W.2d 494, 498 (holding: "[Appellee] did not file a notice of review, so the issue is not preserved and we will not address it.").

This issue should also not be addressed by this Court because the court below did not rule on it. District raised the issue in its Answer to Application for Writ of Mandamus as an alternative to the constitutional issue. The court did not need to rule on it because it found in District's favor on the constitutional issue. *See Vanderwerff Implement, Inc. v. McCance*, 1997 SD 32, ¶ 18, 561 N.W.2d 24, 27 (holding: "As we have stated numerous times, 'issues not addressed or ruled upon by the trial court will not be addressed by this Court for the first time on appeal.' ") (citations omitted). Therefore, the legal doctrine of judicial restraint dictates we *must* decide the constitutional issue because it is the only issue properly presented for our review.

to carry out a particular public purpose. 56 AmJur2d *Municipal Corporations, Counties, and Other Political Subdivisions* § 13 (2dEd. 1971). Districts are considered to be quasi corporations. *See Frans v. Young,* 30 Neb. 360, 46 N.W. 528, 529 (1890) (holding that a school district was a quasi corporation and not a municipal corporation); *State v. Stewart,* 74 Wis. 620, 43 N.W. 947, 948 (1889) (holding a drainage district is a quasi corporation); *see also Town of Dell Rapids v. Irving,* 7 S.D. 310, 315, 64 N.W. 149, 151 (1895) (describing a quasi corporation as: "Involuntary quasi corporations, such as counties, towns, and school districts, are created almost exclusively with a view to the policy of the state at large, for the purposes of political organization and civil administration[.]") (citation and internal quotation omitted). It has even been specifically held that sanitary districts are quasi corporations and do not rise to the level of a municipal corporation. *Brownbriar Enters., Inc. v. City and County of Denver,* 177 Colo. 198, 493 P.2d 352, 354 (1972); *Martin Excavating, Inc. v. Tyrollean Terrace Water and Sanitation Dist.,* 671 P.2d 1329, 1330 (Colo.Ct.App.1983).

[¶ 15] Beals argues the term "municipality" in Article III, § 1, of our constitution should be read broadly to cover entities such as sanitary districts. She cites to our case of *Egan Indep. Consol. Sch. Dist. v. Minnehaha County,* 65 S.D. 32, 270 N.W. 527 (1936), wherein we read the term "municipal corporation" broadly so as to include a school district. In *Egan,* it was recognized that the term "municipal corporation" is generally used in a strict sense, but that it can be interpreted broadly to embrace quasi corporations. *Id.,* 65 S.D. at 36, 270 N.W. at 529. Article XI, § 5, of our constitution was being examined in *Egan.* It was decided that the term "municipal corporation" in that section was to be read broadly because, in § 10 of the same article, "cities, towns and villages" were referred to separately from "all municipal corporations." *Id.* The court reasoned

that, because only "cities, towns and villages" were given the power to tax for local improvements and "all municipal corporations" were given authority to tax for all corporate purposes, the phrase "municipal corporations" was not to be read strictly, and was to include more than "cities, towns and villages." *Id.,* 65 S.D. at 37, 270 N.W. at 530.

[¶ 16] Beals claims that provisions of the constitution should be read harmoniously and, since "municipal corporation" has been interpreted broadly in Article XI, the term "municipalities" should also be read broadly in Article III.

[¶ 17] Beals also claims that the definition in SDCL 9–1–1(6), which defines "municipal corporation" or "municipality," is unconstitutional because it conflicts with our interpretation in *Egan.* Title 9 of our codified laws pertains to municipal government and section 9–1–1(6) of that chapter provides:

Terms used in this title, unless the context otherwise plainly requires, shall mean:

. . . . .

(6) "Municipal corporation" or "municipality," all cities and towns organized under the laws of this state but shall not include any other political subdivisions[.]

[¶ 18] In examining SDCL 9–1–1(6), we cannot say that it is unconstitutional. Legislative acts are presumed to be constitutional. *Poppen,* 520 N.W.2d at 241. That presumption is not overcome until it is clearly and unmistakably shown beyond a reasonable doubt that the act violates constitutional principles. *Id.* Beals has failed to overcome this presumption. The legislature has a plenary power to classify and organize units of local government. S.D.Const.Art. IX, § 1.[2] That is precisely what it has done in this situation. There is no indication that the term "municipality" is meant to apply to Article III, § 1, of the constitution. SDCL 9–1–1 specifically states that the definition applies to Title 9 of our codified laws. The

---

2. Article IX, § 1, provides: "The legislature shall have plenary powers to organize and classify units of local government, except that any proposed change in county boundaries shall be submitted to the voters of each affected county at an election and be approved by a majority of those voting thereon in each county. No township heretofore organized may be abolished unless the question is submitted to the voters of the township and approved by a majority of those voting thereon in each township."

legislature is not attempting to contradict the constitution and, therefore, this provision is constitutional. While this definition is not controlling, it does demonstrate the common definition of "municipality" and not the liberal interpretation that embraces quasi corporations. Also, as will be shown below, SDCL 9-1-1(6) does not contradict the interpretation of "municipality" in our constitution.

[¶ 19] Beals' argument that, based on our decision in *Egan*, the term "municipality" or "municipal corporation" should be read broadly in our constitution, does not properly interpret the *Egan* holding. There it was recognized that other constitutional provisions did not include school districts as "municipal corporations" but, rather, followed a strict reading of the term. 65 S.D. at 37, 270 N.W. at 530.

[¶ 20] In *Town of Dell Rapids*, this Court held that the term "municipal corporations" as used in Article XVII, § 18, of the constitution was intended to be used in its restricted sense, "as applicable only to incorporated cities, towns or villages invested with the power of local legislation." *Id.*, 7 S.D. at 316, 64 N.W. at 151. It was determined that quasi corporations were not to be included as municipal corporations, because they are "mere political subdivisions of the state, having the powers expressly granted to them, and such implied powers as are necessary to enable them to perform their duties, and no more." *Id.*, 7 S.D. at 315, 64 N.W. at 151. The court also followed the strict reading of the word based on how it was used in other sections of the constitution. *Id.*, 7 S.D. at 316, 64 N.W. at 151 (referring to Article XIII, and former Articles IX and X of our constitution).

[¶ 21] Likewise, in *Sanders v. Indep. Sch. Dist. of City of Sioux Falls*, 35 S.D. 48, 54, 150 N.W. 473, 475 (1915), the term "municipal corporation," as used in Article X, § 1, of the constitution,[3] was read strictly so as to exclude quasi corporations. This Court stated that "municipal corporations" only referred to cities, towns, and villages, and did not extend to school districts. *Id.*, 35 S.D. at 53, 150 N.W. at 474.

[¶ 22] While *Egan* is authority for the proposition that we should interpret the term "municipalities" in a broad sense, it is not dispositive of the issue. It seems our interpretations of the phrases "municipality" and "municipal corporations" has not been as uniform as Beals would argue. We, therefore, need to examine the term "municipalities" in the context in which it is used in Article III, § 1.

[¶ 23] Based upon our review of Article III, § 1, we conclude that the proper construction to give the term "municipalities" is a strict one, excluding sanitary districts.[4] This case differs from *Egan*, because there one sentence mentioned "cities, towns and villages" and the next referred to "all municipal corporations." Here, other than the legislature, there is no mention of any other governmental bodies in Article III, § 1. Because the word "municipalities" appears plainly on its face, we must give it its ordinary and recognized meaning.

[¶ 24] Article III, § 1, was passed as chapter 39 of the 1897 Session Laws and contained the same phrase, "This section shall apply to municipalities," as it does today. This amendment was approved by the voters in the November 8, 1898, election. The next time the legislature met was in 1899, and chapter 94 of the 1899 Session Laws is entitled "An Act to Provide for Carrying Into Effect the Amendment of section 1, Article 3, of the Constitution of the State of South

---

3. Article X was repealed in 1972 and its provisions were modified and combined with Article IX. Article X, § 1, previously read: "The legislature shall provide by general laws for the organization and classification of municipal corporations. The number of such classes shall not exceed four, and the powers of each class shall be defined by general laws, so that no such corporations shall have any powers, or be subject to any restrictions other than those of all corporations of the same class[.]"

4. The special writing cites to *State* ex rel. *Wegner v. Pyle*, 55 S.D. 269, 271, 226 N.W. 280, 281 (1929), for the proposition that the language in Article III, § 1, "leaves no room for construction either strict or liberal." However, that case is distinguishable because it decided whether a certain law should be subject to referendum, *not* whether the constitution allows for a particular entity to exercise initiative and referendum.

Dakota, Relating to the Initiative and Referendum *as Applied to Municipalities.*" (Emphasis added.) Section 1 of that enactment is limited in application to "any city or town." Section 10 of that enactment also only refers to "any city or town." This enactment was necessary to carry into effect initiative and referendum for municipalities as found in Article III, § 1. This indicates that the only definition ever intended to be given to the term "municipalities" in Article III, § 1, was a strict one applying only to cities and towns.[5]

[¶ 25] Similar support for the proposition that the term "municipalities" should be read narrowly can be seen in our opinion in *Davenport v. Elrod.* In that case we held:

> The words and terms of a Constitution, like those of a statute, are to be interpreted and understood in their most natural and obvious meaning, unless the subject indicates or the text suggests that they have been used in a technical sense. The presumption is in favor of the natural and popular meaning in which the words are understood by the people who have adopted them; and where the same words are used in different parts of a Constitution or statute they are presumed to have a uniform meaning throughout the instrument, but this does not necessarily follow.

20 S.D. 567, 574, 107 N.W. 833, 834 (1906) (citation and internal quotations omitted). *Davenport* held that the word "municipal," as used in Article III, § 26,[6] of our constitution,

was to be given its primary and popular meaning of only referring to the affairs of cities and towns. *Id.,* 20 S.D. at 575, 107 N.W. at 834; *see also Specht,* 526 N.W.2d at 730–31 (defining the term "municipal function" in Article III, § 26). We further held in *Davenport* that "[i]t should be assumed that the language employed in so important an instrument would be selected with deliberation and due discrimination, to the exclusion of all unnecessary repetitions." 20 S.D. at 575, 107 N.W. at 834–35.

[¶ 26] To hold that the term "municipalities" should extend to quasi corporations such as sanitary districts would be inappropriate. Such a broad reading of that term in Article III, § 1, would conflict with how the legislature understood the term at the time the amendment was adopted, and with our decision in *Davenport* that the term "municipal" in Article III, § 26, should be strictly construed. Absent any indications to the contrary, the term should be given its plain and strict interpretation.

▆▆▆ [¶ 27] Sanitary districts are legislatively created under Title 34A. They may be given several limited municipal powers to aid them in their defined purpose,[7] however, they are not subject to initiative and referendum. The special writing states that the legislature does not get to "pick and choose" which legislative bodies are subject to initiative and referendum, however, this position is erroneous. The initiative and referendum

5. The special writing argues that "[i]t is of no moment that 'sanitary districts' may have been unknown to the framers of our constitution." It claims the language of the constitution is generally extended " 'to include new things and new conditions of the same class as those specified which were not known or contemplated when it was adopted.' " (Citation omitted.) This may be true, however, while sanitary districts may not have been around in the late 1800s, other political subdivisions were, yet were specifically not included in Article III, § 1. *See Town of Dell Rapids,* 7 S.D. at 315, 64 N.W. at 151 (holding, three years *before* Article III, § 1, was voted on, that "school districts" and other "quasi corporations" were not municipal corporations as used in Article XVII, § 18, of our constitution).

6. Article III, § 26, provides: "The legislature shall not delegate to any special commission, private corporation or association, any power to

make, supervise or interfere with any municipal improvement, money, property, effects, whether held in trust or otherwise, or levy taxes, or to select a capital site, or to perform any municipal functions whatever."

7. SDCL 34A–5–31 provides that certain aspects of municipal law shall apply to sanitary districts. However, of the sections mentioned, the procedures for initiative and referendum are not included. Such a grant of limited municipal functions is completely consistent with the quasi corporation concept, and does not convert a quasi corporation into a municipal corporation. *See Town of Dell Rapids,* 7 S.D. at 315, 64 N.W. at 151 (noting that quasi corporations are granted some municipal corporation functions, and have some implied powers, but such are only granted to enable them to perform their public duties and not to make them actual municipal corporations).

process is a power reserved to the people in regards to the legislature. This is not true for political subdivisions of the state. "In the absence of any explicit provision, whether a constitutional amendment confers upon the people of a political subdivision of the state the power of initiative and referendum as to local matters depends upon the terms of the amendment, and the question resolves itself into one of construction." 42 Am.Jur.2d *Initiative and Referendum* § 7 (2dEd. 1969). The Supreme Court of Arkansas, in interpreting its first version of an initiative and referendum amendment, held that it did not apply to municipalities and counties. *Hodges v. Dawdy*, 104 Ark. 583, 149 S.W. 656, 660 (1912). The court explained:

> The amendment does not confer power. It reserves it. Now, the sovereign power rested, both before and since the adoption of this amendment, in the people of the whole state. Power was delegated by the whole people to the General Assembly; but the purpose of this amendment was to reserve to themselves the legislative power. In other words, they withdrew the exclusive legislative power theretofore delegated to the General Assembly, and reserved the right to exercise it themselves under certain conditions. The people of each municipality and county, never having possessed the sovereign legislative power, apart from the other people of the state, could not *reserve* such power. It could be *conferred* upon them by the people of the whole state; but they could not reserve that which they did not possess and had no power to take for themselves.

*Id.* (Emphasis added.) While Arkansas has since changed their amendment to include municipalities, this case does stand for the proposition that initiative and referendum are not inherent in all political subdivisions.

[¶ 28] Sanitary districts are not subject to initiative and referendum, however, should the legislature desire to provide sanitary districts with initiative and referendum, it argu-

ably could do so. The special writing does not agree that the legislature is able to decide which political subdivisions can exercise initiative and referendum. This ignores the fact that the legislature has provided initiative and referendum for counties. *See* SDCL 7–18A–9 through 7–18A–24. We have even upheld the constitutionality of these statutes as applied to counties. *Hofer v. Bd. of County Comm'rs*, 334 N.W.2d 507, 509–10 (S.D. 1983).[8] The legislature has also given some limited form of initiative and referendum power to school districts in SDCL 13–6–41 to –49, and to conservation districts in SDCL 38–8A–12. *See Wyatt v. Kundert*, 375 N.W.2d 186, 192 (S.D.1985); *see also* Lowe, *Restrictions on Initiative and Referendum Powers in South Dakota*, 28 S.D.L.Rev. 53, 54 (1982).

[¶ 29] Affirmed.

[¶ 30] AMUNDSON, KONENKAMP and GILBERTSON, JJ., concur.

[¶ 31] SABERS, J., dissents and alternatively concurs in result.

SABERS, Justice (dissenting & alternatively concurring in result).

–1–

[¶ 32] Article III, Section 1 of the South Dakota Constitution provides:

> **[T]he people expressly reserve to themselves the right to propose measures . . . and also the right to require that any laws which the Legislature may have enacted shall be submitted to a vote of the electors of the state before going into effect . . . .**

(emphasis added). As this court stated nearly seventy years ago, "This language is plain, and leaves no room for construction either strict or liberal. . . . The power granted to the Legislature is restricted and limited by the right of the people to ultimately adopt or reject *any* legislative enactment." *State ex rel. Wegner v. Pyle*, 55 S.D. 269, 271, 226 N.W. 280, 281 (1929) (emphasis added).

---

**8.** The special writing cites to *Hofer*, 334 N.W.2d at 509–10, as support for its position. However, all *Hofer* stood for was that while Article III, § 1, does not mention counties, it also does not limit the legislature's ability to grant initiative and referendum to counties through *statutes*. The

legislature may someday enact statutes granting initiative and referendum to sanitary districts, however, it has not done so, and there is also nothing in our constitution that grants those powers to sanitary districts.

[¶ 33] I cannot agree that the Legislature can set up a political subdivision, delegate to it the Legislature's police and lawmaking powers, and then circumvent the Constitution by insulating that political subdivision from the referendum process. I disagree with the majority opinion's statement that "should the legislature desire to provide sanitary districts with initiative and referendum, it arguably could do so." The Constitution declares that "the people expressly reserve" the right to initiative and referendum and the Legislature does not get to pick and choose which legislative bodies are subject to the process. S.D.Const. art. III § 1. The majority opinion claims that this statement "ignores the fact that the legislature has provided initiative and referendum" for counties, school districts, and conservation districts.[9] The Legislature is *obligated* under the Constitution to provide for initiative and referendum to those entities to which it delegates its legislative powers and its failure to do so frustrates and violates the purposes of this constitutional provision. The enactment of legislation to implement initiative and referendum procedures is not merely contemplated, it is mandated. Article III section 1 provides, "The Legislature *shall* make suitable provisions for carrying into effect the provisions of this section." (Emphasis added) *See* 42 Am.Jur.2d *Initiative & Referendum* § 4, at 652 (1969):

> In the case of constitutional initiative and referendum provisions that are not self-executing,[10] legislation is required before initiative and referendum is available.... The legislation must, of course, be consistent with the constitutional provisions.

[¶ 34] "[T]he *failure of the legislature to act cannot take away a right constitutionally*

*granted.*" 16 Am.Jur.2d *Constitutional Law* § 140, at 511 (1979) (emphasis added); *accord Rose v. State*, 19 Cal.2d 713, 123 P.2d 505, 513 (1942) ("[A] right constitutionally granted cannot be taken away by the failure of the legislature to act.").

> [T]he command of a constitutional provision which is not self-executing remains in force even though it is for the legislature to choose the time and form for carrying out the command. And it has been said that, while a provision in the constitution may need legislation to enforce its principles and give them affirmative effect, yet, without any legislation, such a provision may have a negative force in prohibiting acts in violation of its terms and nullifying statutes repugnant to its principles, and thus although, from the lack of legislation, its principles cannot be affirmatively enforced, neither, on the other hand, can those principles be lawfully violated, or any statute violating them be enforced.

*Constitutional Law, supra* § 140, at 511–12. Here, it is not a statute, but a Supreme Court opinion which is repugnant to, and in violation of a constitutional provision.

[¶ 35] It is not necessary to determine whether a sanitary district is a "municipality" because the legislative actions of a political subdivision engaged in the public function of sewage control are subject to referendum under the Constitution regardless of whether the entity is a municipality.[11] *Cf. In re Oahe Conservancy Subdist.*, 85 S.D. 443, 459–60, 185 N.W.2d 682, 691–92 (1971):

> Conservancy districts are organized for a public purpose and are state agencies and public corporations. The Subdistrict, except for limitations of area and power as

---

9. The majority opinion consistently fails to appreciate that the powers of initiative and referendum are not powers granted to or exercised by a particular entity. The powers are expressly reserved by the people *to themselves*. The power of referendum applies to the laws enacted by the Legislature, and thus necessarily applies to the laws enacted by the Legislature's subdivisions. Whether the Legislature can extend the power to other political entities, such as school districts (subdivisions of the executive branch) is not at issue. The issue is whether this court or the Legislature can deny the people a constitutionally reserved power. Obviously, the answer is no.

10. If legislation is required to make some part of or all of a constitutional provision for initiative and referendum effective, the provision is not selfexecuting. *Initiative & Referendum* § 3, at 652.

11. The majority opinion has it backwards; it elevates statutes over the Constitution. It takes a positive (the reservation of rights in the people) and by its conclusion, turns it into a negative.

defined by statute, *necessarily partakes of the same governmental agency and body politic characteristics as its parent body* [.]
. . .

School, power and conservancy districts are all agencies of the state; their organizations and boundaries, as well as their powers, are wholly within the legislative discretion *unless limited by the constitution.*

(Emphasis added); *In re Heartland Consumers Power Dist.*, 85 S.D. 205, 213, 180 N.W.2d 398, 402 (1970) (declaring constitutional the Legislature's creation of a nonprofit, public service utility district to assist the state in the performance of its governmental function of furnishing power and light).

[¶ 36] The Legislature cannot set up a political subdivision, delegate to it the role of exercising the Legislature's valid police and lawmaking powers, yet preclude the people from exercising the constitutionally reserved powers of initiative and referendum. The Legislature's legislative actions are subject to referendum; therefore, so too are the actions of its subdivisions to which it delegates its power. When the lawmaking power is exercised, "it [is] necessary that such law be passed according to the constitutional provisions of this state, and that the referendum [is] applicable thereto." *State ex rel. Schrader v. Polley*, 26 S.D. 5, 11, 127 N.W. 848, 851 (1910). "The Constitution is the mother law. It is not the baby. Statutes must conform to the Constitution, not vice versa." *Poppen v. Walker*, 520 N.W.2d 238, 242 (S.D.1994) (quoting *Cummings v. Mickelson*, 495 N.W.2d 493, 507 (S.D.1993) (Henderson, J., concurring in part & dissenting in part)).

[¶ 37] It is of no moment that "sanitary districts" may have been unknown to the framers of our constitution. *Cf. Gaiser v. Buck*, 203 Ind. 9, 179 N.E. 1, 4 (1931) ("[T]he language of a Constitution (or statute) is generally extended to include new things and new conditions of the same class as those specified which were not known or contemplated when it was adopted."). In *Hofer v. Board of County Commissioners*, 334 N.W.2d 507 (S.D.1983), the circuit court

ruled that the statute providing for referral of county ordinances and resolutions was unconstitutional and an appeal was brought. Although this court remanded so notice of the constitutional challenge could be given to the attorney general, it first commented on the merits. In response to the Board's argument that counties were not subject to the initiative and referendum provisions because counties are not expressly mentioned, this court noted:

[T]he rule of "expressio unius est exclusio alterius" (the expression of one thing is the exclusion of another) is generally not applied in construing constitutional provisions relative to the taxing power of the legislature which has been said to be without limit except as prescribed by the constitution. *We can conceive of no reason why the right of the people to subject the legislative actions of the county commissioners to the scrutiny of referendum vote should be afforded less protection than taxing powers.*

*Id.* at 509–10 (emphasis added ) (citation omitted). Here, I can conceive of no reason, and the majority fails to provide a reason, why the right of the people to subject the legislative actions of the sanitary district to the scrutiny of referendum vote should be afforded less protection than taxing powers.[12]

[¶ 38] It is not the label assigned to a political subdivision, but rather its powers and functions which determine whether a particular action is subject to referendum. The Legislature delegated the following powers to a sanitary district:

. . .

(4) To construct and operate storm and sanitary sewers and sewage and solid waste disposal plants and systems.

(5) To borrow money, levy taxes and special assessments, issue bonds, and exercise the power of eminent domain in the same manner as municipalities of the first class in this state, provided, however, that the board of trustees shall not have the power

12. This is especially so in light of the sanitary district's power to tax. *See* SDCL 34A–5–26(5).

of eminent domain over existing sewage, garbage and refuse facilities.

SDCL 34A–5–26; *see also* SDCL 34A–5–31:

All proceedings for the construction and operation of sewer and sewage disposal plants and solid waste disposal plants and systems and the borrowing of money, making of special assessments, and issuing of bonds shall be governed, to the extent applicable, by § 9–12–1 and chapters 9–26, 9–40, 9–43, and 9–48 and in the exercise of the power of eminent domain the board of trustees may proceed as condemnation proceedings are conducted by the department of transportation under chapter 31–19 or as may otherwise be provided.

These statutes provide the framework for municipal operations. *See* SDCL 9–12–1 (general corporate powers); ch. 9–26 (general obligation bonds); ch. 9–40 (utility facilities and revenue bonds); ch. 9–43 (financing of improvements); ch. 9–48 (sewer systems); *see also* ch. 31–19 (acquisition of land and materials by the Department of Transportation). It cannot seriously be argued that actions taken pursuant to these powers may *never* be subject to referendum. *Cf. Wang v. Patterson*, 469 N.W.2d 577, 580 (S.D.1991) ("[T]he only way for citizens to challenge the necessity of specific condemnations [made in the exercise of the power of eminent domain] is through referendum.").

[¶ 39] The constitutional right of initiative and referendum puts the people and the legislative body on "equal footing". *Christensen v. Carson*, 533 N.W.2d 712, 718 n.3 (S.D.1995) (citations omitted) (Sabers, J., dissenting). The effect of the majority opinion's conclusion would be to allow the Legislature to set up "mini-legislatures" not subject to referendum and therefore superior to the people. Such a result is clearly unconstitutional. In other words, the Constitution already provided the right of initiative and referendum in this case.

These constitutional ... provisions must be construed liberally in favor of the people's right to exercise the reserved powers of initiative and referendum. The initiative and referendum are not rights granted the people, but powers reserved by them. Declaring it the duty of the courts to jealously guard this right of the people, the courts have described the initiative and referendum as articulating one of the most precious rights of our democratic process. It has long been our judicial policy to apply a liberal construction to this power wherever it is challenged in order that the right not be improperly annulled. If doubts can reasonably be resolved in favor of the use of this reserve power, courts will preserve it.

*Rossi v. Brown*, 9 Cal.4th 688, 38 Cal.Rptr.2d 363, 366, 889 P.2d 557, 560 (1995) (alterations & internal quotations omitted).

–2–

[¶ 40] It is important to note that we do not need to address the constitutional issue because this case can be resolved on other grounds. *See, e.g., Weegar v. Bakeberg*, 527 N.W.2d 676, 679 (S.D.1995) ("[T]his case can be decided on the merits and there is no need to address the constitutional issue.") (Amundson, J., concurring specially); *accord Sander v. Geib, Elston, Frost Professional Ass'n*, 506 N.W.2d 107, 127 (S.D.1993) ("[B]ecause we have decided this case on other than constitutional grounds, we are not warranted in addressing the constitutional questions raised[.]") (Miller, C.J.).

[¶ 41] Alternatively, I would concur in result on the basis that the resolution awarding the construction bid to Dahme is an administrative decision and therefore not subject to referendum. The initial resolution approving the financing and construction of a wastewater system was a legislative action and potentially referable.[13] However, that resolution

13. Our Constitution expressly excepts from referendum "laws as may be necessary for the immediate preservation of the public peace, health or safety[.]" *S.D. Const. art.* III § 1. "A law may be necessary for the preservation of the public peace, health, or safety, and still be subject to the referendum, unless the Legislature declares it necessary for the immediate preservation of the

public peace, health, or safety." *Gravning v. Zellmer*, 291 N.W.2d 751, 757 (S.D.1980) (citation omitted). Here, this resolution provides:

The District finds and determines that, without making the improvements included in the Project, the Wastewater System would pose a health hazard to the residents of the Pickerel

was not referred. Here, Beals attempted to refer only the resolution granting the bid to Dahme Construction Co. This she cannot do. SDCL 9–20–19 provides:

> Any legislative decision of a governing body is subject to the referendum process. A legislative decision is one that enacts a permanent law or lays down a rule of conduct or course of policy for the guidance of citizens or their officers. Any matter of a permanent or general character is a legislative decision.
>
> No administrative decision of a governing body is subject to the referendum process, unless specifically authorized by this code. *An administrative decision is one that merely puts into execution a plan already adopted by the governing body itself or by the Legislature.* Supervision of a program is an administrative decision. Hiring, disciplining and setting the salaries of employees are administrative decisions.

(Emphasis added).

[¶ 42] In *Wang*, this court discussed the difference between legislative and administrative decisions. In that case, the City of Sturgis argued its decision to condemn certain land was simply an administrative decision made in conjunction with its "master plan" to build an airport and therefore not referable. We disagreed:

> Citizens note that the master plan did not authorize condemnation and thus did not apprise them of the fact that land would be condemned for the proposed airport. They contend that the resolutions of condemnation were city's first actions which apprised them that the city was definitely going to condemn specific land for the proposed airport. Thus, they claim they should be allowed to refer the resolutions of condemnation.
>
> We agree. "Where discretion is left to the local government as to what it may do, when the local government acts, it acts legislatively and its actions are subject to normal referendum procedure." 5 McQuillin, *Municipal Corporations* § 1655. In

applying the "legislative" versus "administrative" distinction this Court will apply a liberal rule of construction permitting rather than preventing, citizens from exercising their powers of referendum. *See generally* 5 McQuillin, *Municipal Corporations* § 1651 and cases cited therein. The December 21, 1987 motion to adopt alternative # 11 as the master plan did not direct the condemnation of any land. Similarly, the March 6, 1989 motion simply indicated that the city council was willing to proceed with land condemnation "if required." The city council still retained discretion to decide whether condemnation was necessary. When the city council passed the resolutions of condemnation on April 2, 1990, they were exercising that discretion and their decision was legislative and subject to referendum.

469 N.W.2d at 579–80. Likewise, when District passed the resolution approving the construction of a wastewater system, it was exercising its discretion and its decision was legislative and subject to referendum.

[¶ 43] The residents of the District were apprised of the cost and location of the project and Dahme's low bid was within the price contemplated in the initial resolution. Therefore, the subsequent resolution awarding the bid represents an administrative decision which "merely puts into execution a plan already adopted by the governing body itself" and is thus not subject to referendum. SDCL 9–20–19; *accord Read v. City of Scottsbluff,* 139 Neb. 418, 297 N.W. 669, 672 (1941) (holding that the acceptance of a bid, unmixed with the exercise of any legislative power, is purely administrative and not subject to referendum).

## CONCLUSION

[¶ 44] Article III, section 1 clearly reserves to the people the powers of referendum and initiative. The majority opinion commits a grievous error by focusing on the label of the political subdivision and by ignoring its legislative powers and functions. That is not only

---

Lake Sanitary District, and the lands adjacent thereto.

Beals claims the exception does not apply because the District did not employ the precise

words "necessary for the immediate preservation of the public peace, health, or safety." We need not decide this question since Beals did not attempt to refer this resolution.

error, but it is unnecessary error because this resolution was administrative and not referable. The constitutional question should not be reached, especially incorrectly.

[¶ 45] We should affirm the circuit court's order on the basis that the District's resolution to award the bid is an administrative decision not subject to referendum.