1999 SD 147

**DAKOTA CHEESE, INC. and James J. Dee, Plaintiffs and Appellants,**

v.

**Bruce M. FORD and Burns & Ford, Trial Lawyers, a partnership, Defendants and Appellees.**

No. 20943.

Supreme Court of South Dakota.

Argued Oct. 18, 1999.

Decided Nov. 23, 1999.

John S. Theeler of Morgan, Theeler, Cogley & Petersen, Mitchell, South Dakota, for plaintiffs and appellants.

James E. McMahon and Lisa Hansen Marso, Boyce, Murphy, McDowell & Greenfield, Sioux Falls, South Dakota, for defendants and appellees.

SABERS, Justice.

[¶ 1.] Dakota Cheese, Inc. and its President, James Dee, appeal an Order granting a motion for summary judgment in favor of Bruce M. Ford and Burns & Ford, Trial Lawyers (Ford). We reverse and remand for trial.

## FACTS

[¶ 2.] Dakota Cheese and Dee hired Ford to represent them in a legal malprac-

tice action against E. Steeves Smith, James Taylor and the law firm of "Tinan, Padrnos, Smith & Taylor." This action was involuntarily dismissed due to Ford's failure to prosecute. We affirmed this dismissal. *See Dakota Cheese, Inc. v. Taylor,* 525 N.W.2d 713 (S.D.1995). While the present case involves the alleged negligence of Ford, we need to explore the facts of the underlying case, the case within the case.

[¶ 3.] Dakota Cheese was a cheese production company located in Mitchell, South Dakota. From 1983 to 1985, it contracted to sell mozzarella cheese to the United States Department of Agriculture (USDA) through the Commodity Credit Corporation (CCC), an agency of the USDA. In 1983, Dakota Cheese began using calcium caseinate in the mozzarella cheese that it sold to the government.[1] However, Dakota Cheese did not label this cheese "imitation;" an omission which is illegal and ultimately led to Dakota Cheese saving $695,000 on its government contract in one year.[2]

[¶ 4.] In 1985, Dakota Cheese and Dee hired Smith and Taylor to represent them in an audit conducted by the USDA. Prior to the audit, original invoices from New Zealand Milk Products, Inc. were altered; i.e. the name "calcium caseinate" was removed leaving only the product description, "Alanate 310," on the invoice.[3] Dee alleges that "Smith and Taylor advised [him] not to turn over relevant documents to the auditor." He further alleges that

Smith and Taylor "advised [him] that some of the original New Zealand invoices could be altered and redacted, giving the auditors access only to the altered documents, but without disclosing the alteration to the auditors;" a process that Dee claims Smith and Taylor advised was "legal and customary."

[¶ 5.] Taylor testified that he directed a staff member with the Smith and Taylor law firm to perform the alterations to the New Zealand invoices. Smith admitted that he had full knowledge of the alterations and that he consented. However, Smith and Taylor claim that Dee stated "he did not want to produce invoices with the phrase 'calcium caseinate' on them" because calcium caseinate was a trade secret and that its exclusion was not illegal as long as the term "Alanate 310" was used and it was used. Smith further testified that Dee stated, on delivering the original invoices to Smith, that he didn't ever want to see the documents again.

[¶ 6.] Dee then transported all relevant documents, including the original New Zealand invoices, to the Smith and Taylor law office. This was the last time Dee saw the New Zealand invoices. The USDA conducted its audit at this law office. The auditors subsequently filed a subpoena for, among other documents, the original New Zealand invoices which were not produced in the audit. According to Dee, he thought these invoices had been produced.

[¶ 7.] The USDA then involved the U.S. Attorney in an investigation that evolved

---

1. Calcium caseinate is an ingredient used to make imitation cheeses. It is a substitute for nonfat dry milk. For a complete discussion of the uses of calcium caseinate and the process, see *United States v. Dakota Cheese, Inc.,* 906 F.2d 335, 337 (8th Cir.1990).

2. It is not disputed that Dee engaged in behavior that led to the concealment of the use of calcium caseinate. Dee directed employees to remove the outer identifying wrapper from the calcium caseinate bags and transported the caseinate from the plant to the warehouse when the inspectors were expected. However, we are not dealing with Dee's behavior in this instance. We are dealing

only with the concealment by Smith and Taylor, the damages resulting from that concealment and the negligence of Ford in pursuing same.

3. "Calcium caseinate is marketed in the United States by New Zealand Milk Products, Inc., which is owned by the dairy farmers of New Zealand through a cooperative structure. The calcium caseinate used by appellants was manufactured in New Zealand Milk Products' Sioux Falls, South Dakota, plant from casein imported from New Zealand." *United States v. Dakota Cheese, Inc.,* 906 F.2d at 337.

into a federal grand jury investigation. A subpoena, demanding all documents that had been reviewed by the auditors at Smith's office and the originals, was issued. Smith personally drove 21 boxes of documents to Sioux Falls and delivered them to U.S. Attorney Bonnie Ulrich. However, he did not include the original New Zealand invoices that had been altered and redacted. Smith later testified as to the whereabouts of these documents:

Q: Where were the original New Zealand invoices that had been redacted in your office?

A: The originals?

Q: Yes.

A: I think they were in our office.

Q: And they weren't delivered to the U.S. Government per the subpoena. Is that correct?

A: They were not delivered, as far as I know.

Smith further testified that his withholding of these invoices was not at Dee's instruction.

[¶ 8.] At Smith's recommendation, Dakota Cheese and Dee employed a Minneapolis law firm to represent them in the government investigation. Smith turned over his legal file and pertinent documents to the Minneapolis attorneys, but did not produce the original invoices nor did he tell them about the alterations.

[¶ 9.] The government eventually brought a motion to enforce the grand jury subpoena and an order to show cause to hold Dakota Cheese in contempt for failing to produce the original documents to the auditors and to the grand jury pursuant to the subpoena. Prior to the hearing, the Minneapolis attorneys contacted Smith and inquired into the whereabouts of the invoices. Smith informed him that he did not know the whereabouts of the invoices. Dee saw Smith the morning of the hearing and the invoices had not yet been located.

[¶ 10.] The contempt hearing resulted in Dakota Cheese being fined $500 each day the originals were not produced. Dee alleges that he went to Smith's office the following day and Smith stated he could not find the originals. The contempt fines ran from December 1, 1987 to July 19, 1988. The total contempt fine, with interest, was $121,234.75. It was paid in 1989 by Dakota Cheese.

[¶ 11.] In July 1988 Dakota Cheese and Dee were indicted and criminal charges were brought against them. On November 10, 1988, the Minneapolis attorneys interviewed Taylor at his Mitchell office in preparation for Taylor's testimony at the criminal trial. When Taylor was asked if he then knew the whereabouts of the original New Zealand invoices, he reached into his desk drawer and retrieved the invoices. When questioned whether it bothered him that the invoices had been withheld from the auditors, Taylor stated:

A: Not particularly. I tell you what really bothered me was if I should give them to Smith or not.

Q: Why would that be the case? He's Dakota Cheese's lawyer.

A: But in the process[,] Smith, at least I understood[,] Smith was trying to screw me at every turn.

Q: So you were hanging onto those documents to use to defend yourself if needed?

A: If necessary.

Smith testified that he knew either he or Taylor had the invoices on the day of the contempt hearing. The documents were withheld without Dee's knowledge.

[¶ 12.] In June 1989, Dakota Cheese and Dee employed Ford to represent them in a legal malpractice action against Smith and Taylor. He caused a summons to be served against Smith and Taylor without a complaint in June 1989. From June 1989 to November 1992, Ford investigated, researched and prepared the case. However, in November 1992, he withdrew from the case because he "didn't believe [his] firm had the resources to carry on with the case alone." Ford never filed a complaint in the three and a half years he had the

case even though he believed that Smith and Taylor were "grossly negligent." [4]

[¶ 13.] Dakota Cheese and Dee hired another set of lawyers, Steven Johnson and Scott Heidepriem, who served the complaint against Smith and Taylor on May 24, 1993. However, the case against Smith and Taylor was dismissed for want of prosecution. The South Dakota Supreme Court affirmed this decision. *See Dakota Cheese, Inc. v. Taylor*, 525 N.W.2d 713 (S.D.1995).

[¶ 14.] Dakota Cheese and Dee then sued Ford and Burns & Ford on July 12, 1995 for legal malpractice. Dakota Cheese and Dee were seeking damages equal to the contempt fines, interest and attorneys fees associated therewith. On February 5, 1999, the trial court granted Ford's motion for summary judgment and dismissed the complaint with prejudice. Ford also recovered costs in the amount of $3,595.20. Dakota Cheese and Dee appeal this decision and raise three issues:

1. Whether genuine issues of material fact exist that Smith and Taylor intentionally concealed the original New Zealand invoices and caused a loss to Dakota Cheese and Dee.

2. Whether the trial court abused its discretion in allowing Ford to amend his answer after making a motion for summary judgment.

3. Whether the trial court erred in granting summary judgment on the basis of public policy, unclean hands, collateral estoppel and in determining Dakota Cheese and Dee proximately caused their own damages.

## STANDARD OF REVIEW

[¶ 15.] Our standard of review for summary judgment is well established:

In reviewing a grant or a denial of summary judgment under SDCL 15-6-56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Campion v. Parkview Apartments*, 1999 SD 10, ¶ 22, 588 N.W.2d 897, 902 (quoting *Wildeboer v. S.D. Junior Chamber of Comm.*, 1997 SD 33, ¶ 9, 561 N.W.2d 666, 668 (citations omitted)). "The burden of proof is upon the movant to show clearly that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law ." *Wildeboer*, 1997 SD 33, ¶ 10, 561 N.W.2d at 668-69 (quoting *State Dep't of Revenue v. Thiewes*, 448 N.W.2d 1, 2 (S.D.1989) (citation omitted)). "[T]he

---

4. In a letter dated July 18, 1989, Ford asked John E. Fitzgerald, Jr. to review the file in anticipation that Fitzgerald be an expert witness in this matter. In concluding the letter, Ford wrote: "I believe that the actions of Smith and Taylor were grossly negligent; however, I can sustain my burden of proof in this case only with the testimony of a lawyer of your experience, stature and integrity."

After Fitzgerald agreed to be an expert witness in this case, Ford wrote the "good news" to Dee on August 2, 1989:

I assure you that [Fitzgerald] is very firm in his opinion that the conduct of Smith and Taylor was negligent in this case. As a matter of fact, [Fitzgerald] went so far as to indicate to me that he was surprised Smith and Taylor were not charged by the U.S. Attorney with obstruction of justice.

Ford also wrote to Dee on August 9, 1989 asking for Dee's permission to report Smith and Taylor to the Disciplinary Committee: "I now have enough knowledge of this case to be of the opinion that Attorney Smith and Attorney Taylor violated the Rules of Professional Conduct in their representation of you."

benefit of any doubt about whether there is a material issue of fact goes to the nonmoving party." *Trammell v. Prairie States Ins. Co.,* 473 N.W.2d 460, 462 (S.D. 1991) (citations omitted). "Ordinarily, questions of negligence ... will be for the jury to decide, so long as there is evidence to support them." *Gerlach v. Ethan Coop Lumber Ass'n,* 478 N.W.2d 828, 830 (S.D. 1991) (quoting *Ballard v. Happy Jack's Supper Club,* 425 N.W.2d 385, 389 (S.D. 1988); *Stenholtz v. Modica,* 264 N.W.2d 514, 517 (S.D.1978)).

**[¶ 16.] 1. WHETHER GENUINE IS-SUES OF MATERIAL FACT EXIST THAT SMITH AND TAYLOR INTEN-TIONALLY CONCEALED THE ORIGI-NAL NEW ZEALAND INVOICES AND CAUSED A LOSS TO DAKOTA CHEESE AND DEE.**

■ [¶ 17.] Dakota Cheese and Dee argue that Smith and Taylor intentionally concealed the whereabouts of the original New Zealand invoices from the court as well as from Dee. Ford does not dispute that this argument involves questions of fact; i.e. where the invoices were, who had them, who knew where they were, had Dakota Cheese or Dee ever asked for them. Instead, Ford takes the position that Dakota Cheese and Dee are barred from recovering on the basis of: (1) public policy; (2) an inability to establish proximate cause; (3) unclean hands; and (4) collateral estoppel. Some of these positions are inconsistent with Ford's letter to Dee dated August 2, 1989. *See supra* note 4, at ¶ 12.

[¶ 18.] The trial court granted Ford's motion for summary judgment and stated:

I find that the public policy forecloses the bringing of this lawsuit; that the proximate cause of injury is not the acts

of Smith and Taylor but in fact the actions of Dakota Cheese by Mr. Dee. He obviously had unclean hands. . . . It's Mr. Dee's failure to pursue and find those original documents which cost him $121,000 plus some more attorney's fees.

The trial court also acknowledged the legal malpractice committed in this case:

Again, it comes down to the fact, Smith and Taylor, I don't think anyone would question, committed malpractice. I don't think anyone questions that Burns and Ford by Mr. Ford committed malpractice by not filing a suit. But Mr. Dee is not going to be allowed to profit from his underhanded and criminal behavior almost in not producing the—at least contemptuous behavior in not producing the original document as ordered.

The focus of this case is not the actions of Dakota Cheese or Dee, but rather the actions of their allegedly negligent attorneys, Smith, Taylor and Ford. The trial court's determination that Dee is "not going to be allowed to profit from his underhanded and [almost] criminal behavior" is inappropriate in this instance.[5]

[¶ 19.] "Summary judgment is an extreme remedy" not appropriate for disposing of factual issues or as a substitute for trial. *Koeniguer v. Eckrich,* 422 N.W.2d 600, 601 (S.D.1988). In viewing this case in a light most favorable to Dakota Cheese and Dee, a jury could find that Smith and Taylor intentionally concealed the original New Zealand invoices and that such concealment resulted, at least in part, in the contempt fine of $121,234.75. Ford does not dispute that this involves questions of fact. Thus, it is not subject to summary judgment and Ford has not met his bur-

---

5. The cases relied upon by Ford's attorney primarily deal with negligence actions by the "criminal wrongdoer" against the criminal defense attorney. *See Pfeiffer v. Hoffman,* 251 A.D.2d 94, 674 N.Y.S.2d 32 (1998); *Peeler v. Hughes & Luce,* 909 S.W.2d 494 (Tex.1995); *Johnson v. Odom,* 949 S.W.2d 392 (Tex.App. 1997); *Saks v. Sawtelle, Goode, Davidson &* *Troilo,* 880 S.W.2d 466 (Tex.App.1994); *Dover v. Baker, Brown, Sharman & Parker,* 859 S.W.2d 441 (Tex.App.1993); *Adkins v. Dixon,* 253 Va. 275, 482 S.E.2d 797 (1997). However, here, we are dealing with the negligence of a civil attorney for separate damages arising solely from the contempt action caused by the civil attorney's negligence. See *supra* note 2.

den as movant "to show clearly that there is no genuine issue of material fact [entitling him] to judgment as a matter of law." *Wildeboer*, 1997 SD 33, ¶ 18, 561 N.W.2d at 670 (quoting *Thiewes*, 448 N.W.2d at 2).

[¶ 20.] The South Dakota Constitution provides, in part: "The right of trial by jury shall remain inviolate and shall extend to all cases at law without regard to the amount in controversy . . . ." SD Const. art. VI, § 6. "In cases where the pleadings seek equitable relief or where the legal relief is incidental, a jury trial is a matter for the trial court's discretion. Conversely, when the action is at law, either party has a right to a jury trial." *First Western Bank, Sturgis v. Livestock Yards Co.*, 466 N.W.2d 853, 856 (S.D.1991) (quoting *Nizielski v. Tvinnereim*, 453 N.W.2d 831, 832–33 (S.D.1990)) (citation omitted). Dakota Cheese and Dee are seeking legal relief and, thus, are "entitled to a jury trial as a matter of right." *Id.* (citing *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 473, 82 S.Ct. 894, 897, 8 L.Ed.2d 44, 48 (1962)) (citation omitted). As there are genuine issues of material fact and no controlling judicable issues, the trial court wrongfully denied them of this right.

[¶ 21.] Clearly, this case is filled with factual matters and disputes. The trial court is not supposed to decide issues of fact, instead, it is to decide only if issues of fact exist. *Wilson v. Great Northern Railway Co.*, 83 S.D. 207, 211, 157 N.W.2d 19, 21 (1968) (citation omitted). Whether or not Smith and Taylor intentionally concealed the original New Zealand invoices from Dee and the court and caused the accumulation of contempt fines, at least in part, are genuine issues of material fact, inappropriate for summary judgment. Therefore, we reverse and remand for trial.

[¶ 22.] **2. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN ALLOWING FORD TO AMEND ITS ANSWER AFTER MAKING HIS MOTION FOR SUMMARY JUDGMENT.**

[¶ 23.] After making his motion for summary judgment, Ford moved to amend his answer. He amended his answer to include the following defenses: (1) public policy; (2) Dee's illegal conduct proximately caused the injury; (3) unclean hands; and (4) collateral estoppel. Dakota Cheese and Dee assert that these are affirmative defenses that had never been pled; therefore, they are deemed waived and the trial court abused its discretion in allowing the amendment.

[¶ 24.] SDCL 15–6–15(a) provides, in part:

[A] party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

"A trial court may permit the amendment of pleadings before, during, and after trial without the adverse party's consent." *Tesch v. Tesch*, 399 N.W.2d 880, 882 (S.D. 1987) (quoting *Koenekamp v. Picasso*, 63 S.D. 440, 443, 260 N.W. 623, 624 (S.D.1935) (citations omitted)). This court has further stated that "the most important consideration in determining whether a party should be allowed to amend a pleading is whether the nonmoving party will be prejudiced by the amendment." *Isakson v. Parris*, 526 N.W.2d 733, 736 (S.D.1995).

[¶ 25.] Although these "defenses" may or may not be affirmative defenses, Dakota Cheese and Dees' argument still fails and the amendment was not improper. We have previously allowed a party to amend his pleadings to include an affirmative defense. In so doing, we stated:

*An affirmative defense is not waived if the pleadings are properly amended to include the unpled defense or if the issue was tried by express or implied consent. The decision to allow amendment of pleadings is within the discretion of the trial court.*

*Beyer v. Cordell*, 420 N.W.2d 767, 769 (S.D.1988) (internal citations omitted) (emphasis added).

[¶ 26.] The trial court was within its discretion in granting Ford's motion to

amend his answer. The record does not reflect that Dakota Cheese and Dee suffered any prejudice by allowing Ford to amend his answer. Therefore, no abuse of discretion in allowing the complaint to be amended has been shown.

[¶ 27.] **3. WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON THE BASIS OF PUBLIC POLICY, UNCLEAN HANDS, COLLATERAL ESTOPPEL AND IN DETERMINING DAKOTA CHEESE AND DEE PROXIMATELY CAUSED THEIR OWN DAMAGES.**

[¶ 28.] Dakota Cheese and Dee claim that the defenses added by Ford's amended answer are not a proper basis for granting summary judgment in Ford's favor. Because we hold that genuine issues of material fact exist in this case, the granting of summary judgment on the merits was error.

[¶ 29.] Reversed and remanded for trial.

[¶ 30.] MILLER, Chief Justice, and AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur.

