2000 SD 120

**Christina CASAZZA, Plaintiff and Appellant,**

v.

**The STATE of South Dakota a Political Entity, Jeff Bloomberg, Secretary for the Department of Corrections of the State of South Dakota and Dwane Russell, Warden of the South Dakota Women's Prison, Defendants and Appellees.**

No. 21217.

Supreme Court of South Dakota.

Considered on Briefs March 22, 2000.

Decided Aug. 30, 2000.

Lee C. "Kit" McCahren of Olinger, Lovald, Robbennolt, McCahren and Reimers, Pierre, and Scott G. Hoy of Scott G. Hoy Law Office, Sioux Falls, Attorneys for plaintiff and appellant.

Neil Fulton of May, Adam, Gerdes and Thompson, Pierre, Attorneys for defendants and appellees.

AMUNDSON, Justice.

[¶ 1.] Christina Casazza (Casazza) appeals the granting of summary judgment in favor of State of South Dakota (State), Secretary for the Department of Corrections Jeff Bloomberg (Bloomberg), and Warden Dwane Russell (Russell) of the Women's Prison based upon sovereign immunity and SDCL 3–21–8. We affirm.

## FACTS

[¶ 2.] Casazza is an inmate at the South Dakota Women's Penitentiary. Casazza alleged that in late August of 1998 she was raped by Martin Aponte (Aponte), who was employed as a prison guard. She claims that Aponte had been flirting with her in the past; however, on the day in question, Aponte approached her in the dishroom of the prison, kissed her and asked her to go into the bathroom with him. Casazza refused to go into the bathroom, but Aponte put his hand on her back and lead her into the inmate bathroom.

[¶ 3.] After entering the bathroom, Aponte closed and locked the door. Aponte proceeded to kiss Casazza again. Casazza claims she began to cry and was telling Aponte "no," but he continued to kiss her and tell her that "it's okay, they will know if I do something wrong." Aponte then removed Casazza's top shirt, pulled down her pants and panties and had sexual intercourse with her.. Casazza also claimed that Aponte raped her again a couple days later and the same events occurred in the inmate bathroom.

[¶ 4.] Casazza brought suit against State, Bloomberg and Russell claiming negligent supervision, negligent training, negligent hiring and negligent failure to take action to prevent Aponte from making inappropriate advances towards Casazza. Aponte's employment with the prison was ultimately terminated after investigations by the Department of Criminal Investigation (DCI), but he was never a party to this action.[1]

[¶ 5.] Casazza provided evidence that Aponte's advances toward her were public. Michelle Lyons (Lyons), a fellow inmate, testified that she saw Aponte with Casazza several times. Lyons claimed that she saw Aponte put his hands on Casazza by grabbing her butt, running his fingers through her hair and telling Casazza her hair was soft, and would whistle at her and tell her she had a nice butt. Lyons claimed that there were other complaints against Aponte, but nothing was ever done.

---

1. It is interesting to note that under SDCL 24–1–26.1 (1998),

 Any person, employed by the state, or employed within any state prison or other detention facility, who knowingly engages in an act of sexual penetration with another person who is in detention and under the custodial, supervisory, or disciplinary authority of the person so engaging, is guilty of a Class 6 felony.

[¶ 6.] Russell testified that he became aware of Aponte's conduct after intercepting a letter from an inmate to her boyfriend. Russell learned several inmate names from the letter and began an investigation which ultimately led to Aponte being terminated for kissing two inmates.

[¶ 7.] Prior to trial, State, Russell and Bloomberg moved for summary judgment. The trial court found that Russell's and Bloomberg's actions were discretionary, and therefore, sovereign immunity applied. The trial court also found that SDCL 3–21–8[2] applied as a basis for granting summary judgment. Casazza appeals, raising the following issues:

1. Is the State and its officers immune from suit for a failure to supervise a guard who raped a prisoner?
2. Is SDCL 3–21–8 unconstitutional?

## STANDARD OF REVIEW

[¶ 8.] In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we have often stated,

> we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Dakota Cheese, Inc. v. Ford*, 1999 SD 147, ¶ 15, 603 N.W.2d 73, 76 (quoting *Campion*

*v. Parkview Apartments*, 1999 SD 10, ¶ 22, 588 N.W.2d 897, 902 (quoting *Wildeboer v. South Dakota Junior Chamber of Comm.*, 1997 SD 33, ¶ 9, 561 N.W.2d 666, 668 (citations omitted))). Further, summary judgment should be granted " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.' " *Julson v. Federated Mut. Ins. Co.*, 1997 SD 43, ¶ 5, 562 N.W.2d 117, 119 (quoting *Ford v. Moore*, 1996 SD 112, ¶ 7, 552 N.W.2d 850, 852 (quoting SDCL 15–6–56(c))). Finally, summary judgment will be affirmed " 'only when there are no genuine issues of material fact and the legal questions have been correctly decided.' " *Id.* (quoting *Ford*, 1996 SD 112, ¶ 7, 552 N.W.2d at 852 (citing *Bego v. Gordon*, 407 N.W.2d 801, 804 (S.D. 1987))).

[¶ 9.] We are also faced in this case whether SDCL 3–21–8 is unconstitutional. "[T]here is a strong presumption that a statute is constitutional and the party challenging the constitutionality of a statute has the burden of proving beyond a reasonable doubt that the statute is unconstitutional." *Beals v. Pickerel Lake San. Dist.*, 1998 SD 42, ¶ 8, 578 N.W.2d 134, 135 (citing *Kyllo v. Panzer*, 535 N.W.2d 896, 898 (S.D.1995) (citing *Specht v. City of Sioux Falls*, 526 N.W.2d 727, 729 (S.D. 1995))).

## DECISION

**[¶ 10.] 1. Is the State and its officers immune from suit for a failure to supervise a guard who raped a prisoner?**

*Sovereign Immunity*

[¶ 11.] It is well-established under the common law and South Dakota

---

2. Under SDCL 3–21–8,

> No person, political subdivision or the state is liable for failure to provide a prison, jail or penal or correctional facility, or if such facility is provided, for failure to provide sufficient equipment, personnel, programs, facilities or services in a prison or other correctional facility.

Constitution that "the governing acts of the state, its agencies, other public entities, and their employees cannot be attacked in court without the state's consent." *Hansen v. South Dakota Dep't. of Transp.*, 1998 SD 109, ¶ 9, 584 N.W.2d 881, 881 (citing *Wilson v. Hogan*, 473 N.W.2d 492, 494 (S.D.1991) (citing S.D. Const. art. III, § 27; *Blue Fox Bar, Inc. v. City of Yankton*, 424 N.W.2d 915, 917 (S.D.1988))). Whether a state employee, who is sued in an individual capacity, is entitled to immunity depends upon "the function performed by the employee." *Kruger v. Wilson*, 325 N.W.2d 851, 853 (S.D.1982) (citing *High–Grade Oil Co. v. Sommer*, 295 N.W.2d 736 (S.D.1980); *Sioux Falls Const. Co. v. City of Sioux Falls*, 297 N.W.2d 454 (S.D. 1980)).

 [¶ 12.] To be considered immune from suit, an employee's function must be discretionary, rather than ministerial. *See id.* at 854. The discretionary determination is made by considering the following factors:

(1) The nature and importance of the function that the officer is performing;

(2) The extent to which passing judgment on the exercise of discretion by the officer will amount necessarily to passing judgment by the court on the conduct of the coordinate branch of government;

(3) The extent to which the imposition of liability would impair the free exercise of his discretion by the officer;

(4) The extent to which the ultimate financial responsibility will fall on the officer;

(5) The likelihood that harm will result to members of the public if the action is taken;

(6) The nature and seriousness of the type of harm that may be produced;

(7) The availability to the injured party of other remedies and other forms of relief.[3]

*Kyllo*, 535 N.W.2d at 902 (citing *National Bank of South Dakota v. Leir*, 325 N.W.2d 845, 848 (S.D.1982) (citing Restatement (Second) of Torts § 895D, comment f (1979))).

 [¶ 13.] Unlike discretionary acts which provide immunity to a state employee, a state employee who " 'fails to perform a merely ministerial duty, is liable for the proximate results of his failure to any person to whom he owes performance of such duty.' " *Leir*, 325 N.W.2d at 848 (quoting *State v. Ruth*, 9 S.D. 84, 90, 68 N.W. 189, 190 (1896)). This Court has previously defined ministerial acts as,

absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed designated facts or the execution of a set task imposed by a law prescribing and defining the time, mode, and occasion of its per-

**3.** A review of the record reflects that Casazza made a motion to amend her complaint. At the summary judgment hearing, Casazza informed the court of her desire to amend the complaint to include more defendants and possibly add a claim under 42 U.S.C. § 1983. Neither inclusion was ever made. If Casazza would have brought a § 1983 action, she may have had a better foundation for her suit than under the negligence theory she pled in this case. *See, e.g., DeFoor v. Rotella,* 2000 WL 305478 (10th Cir.2000) (addressing a 42 U.S.C. § 1983 action against two guards at the jail who allegedly raped an inmate, rejecting guards immunity claim and finding that "the law was clearly established that an inmate has a constitutional right 'to be secure

in her bodily integrity and free from attack by prison guards' "); *Giron v. Corrections Corp. of America,* 191 F.3d 1281 (10th Cir.1999) (stating in a 42 U.S.C. § 1983 action brought by an inmate against Corrections Corporation of America (CCA) and warden for her alleged rape that "the rape of an inmate by another inmate, sexual abuse of a prisoner by a corrections officer has no legitimate penological purpose, and is 'simply not part of the penalty that criminal offenders pay for their offenses against society' "). *See also Hart v. Miller,* 2000 SD 53, 609 N.W.2d 138 (allowing a § 1983 action to proceed against a police officer based upon his allegedly "leering and provocative look").

formance with such certainty that nothing remains for judgment or discretion, being a simple, definite duty arising under and because of stated conditions and imposed by law. A ministerial act envisions direct adherence to a governing rule or standard with a compulsory result. It is performed in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action. In short, once it is determined that the act should be performed, subsequent duties may be considered ministerial. If there is a *readily ascertainable standard* by which the action of the government servant may be measured, whether that standard is written or the product of experience, it is not within the discretionary function exception.

*Hansen,* 1998 SD 109, ¶ 23, 584 N.W.2d at 886 (citing 57 Am.Jur.2d *Municipal, County, School & State Tort Liability* § 120 (1988)) (emphasis in original).

[¶ 14.] In the present case, the trial court held:

> I think it's very clear that the jobs of the Secretary of Department of Corrections and the Warden of the Women's Prison are discretionary, are essentially discretionary when it comes to the operation of the prison which, according to the *Hansen* case, would exempt them from liability for a negligence lawsuit which this is.

> If that were not sufficient to warrant summary judgment in their favor, then SDCL 3–21–8 covers it also....

> . . . . .

> Well, I should indicate also that in making the ruling concerning summary judgment that I have specifically considered the seven aspects set out in the *Kyllo* case and find that the Warden and the Secretary's jobs fit squarely in those.

Based upon this rationale, the trial court granted summary judgment in favor of Bloomberg, Russell and State.

[¶ 15.] Casazza argues that the supervision of Aponte is not discretionary. She further claims that by applying the seven factors cited in *Kyllo,* the supervisory acts are clearly ministerial. Casazza argues that clearly there is no specialized discretion utilized, by allowing this proceeding no judgment will be passed upon the conduct of a coordinate branch of government, no impairment of the free exercise of discretion by defendants would exist, no other remedies exist to allow Casazza relief, and if this case doesn't proceed, the other inmates will certainly be harmed by the prison officials and guards being allowed to act with no restraint, prudence, caution or accountability. Casazza fails to cite to the part of the record which supports her assertions that the supervisory actions of Russell and Bloomberg are ministerial, rather than discretionary. She merely concludes that by applying the factors this Court set forth in *Kyllo,* the supervision of Aponte was ministerial. Casazza also fails to provide any authority as to what, if any, supervisory standards applied to Russell and Bloomberg in the employment or supervision of Aponte.

[¶ 16.] Under SDCL 15–6–56(e), "the opposing party [must] be diligent in resisting a motion for summary judgment, and mere general allegations and denials which do not set forth specific facts will not prevent the issuance of a judgment." *Hughes–Johnson Co., Inc. v. Dakota Midland Hosp.,* 86 S.D. 361, 364, 195 N.W.2d 519, 521 (1972) (citing *Liberty Leasing Co. v. Hillsum Sales Corp.,* 380 F.2d 1013 (5th Cir.1967); *Engl v. Aetna Life Ins. Co.,* 139 F.2d 469 (2d Cir.1943)). A review of this case shows that Casazza has failed to "present specific facts showing that a genuine, material issue for trial exists" in regards to the issue of sovereign immunity. *See Dakota Cheese,* 1999 SD 147, ¶ 15, 603 N.W.2d at 76. Instead, Casazza has only provided conclusory statements as to the ramifications to her fellow prisoners if her action is not allowed to proceed. While we believe the actions alleged against Aponte

would be deplorable, our feelings for what Casazza possibly has gone through should not override our obligations on this appeal. Based upon our review of this case, we find that the trial court did not error in granting summary judgment in favor of Bloomberg, Russell and State on the grounds of sovereign immunity.

**[¶ 17.] 2. Is SDCL 3–21–8 unconstitutional?**

[¶ 18.] Based upon our disposition of issue one, we need not address this issue.

[¶ 19.] We affirm.

[¶ 20.] MILLER, Chief Justice, and GILBERTSON, Justice, concur.

[¶ 21.] SABERS and KONENKAMP, Justices, concur in part and concur specially in part.

SABERS, Justice (concurring in part & concurring specially in part).

[¶ 22.] I concur in Issue 2 and concur specially in Issue 1.

[¶ 23.] The majority opinion is correct in asserting that the State "is immune from suit in state courts without legislative consent[.]" *Bego v. Gordon*, 407 N.W.2d 801, 806 (S.D.1987) (citations omitted). However, the legislature consented to suit in this case. The South Dakota Legislature established the Public Entity Pool for Liability (PEPL) fund, effective March 1, 1987. This fund is to provide a "sole source for payment of valid tort claims against all member public entities of the state and their officer and employees for all liability they may incur based upon negligence . . . in performing . . . acts within an employee's scope of employment[.]" SDCL 3–22–1. The State is considered a "member, to the extent it elects to participate." SDCL 3–22–2(9). Clearly, the State has conditionally waived sovereign immunity, but the extent thereof is a question of fact.

[¶ 24.] Under the principles of agency, the State is amenable to suit for the negligent actions or inactions of its employees:

> Whether a principal will be held liable for the conduct of an agent is deter-

mined by the nexus between the agent's employment and the activity which actually caused the injury. Liability will be imposed upon the principal when the nexus is sufficient to make the resulting harm foreseeable. In other words, if the agent's employment puts him in a position where his harmful conduct would not be 'so unusual or startling that it would be unfair to include the loss caused by the injury among the costs of the employer's business,' then the principal is liable for the injury.

*Olson v. Tri–County State Bank*, 456 N.W.2d 132, 135 (S.D.1990) (internal quotation omitted). Obviously, a nexus existed here between the defendant's employment (to supervise the prison guards and protect the basic rights of inmates) and the activity causing the injury (a prison guard raping an inmate).

[¶ 25.] However, I concur specially because Casazza failed to establish that there was a genuine issue of material fact. There was testimony that some inmates complained about Martin Aponte's tendency to sexually assault women within the prison before Casazza was even incarcerated. Yet, there was no showing, other than mere allegations, that any agents of the State were aware of these complaints:

> Q: You indicated that complaints had gone out through [an inmate].
>
> A: Uh-huh.
>
> Q: Who were the persons specifically who made the complaints, if you recall?
>
> A: I'm not sure.
>
> Q: Okay. Were you a person who made complaints?
>
> A: No.

[¶ 26.] There was also testimony from one inmate who stated that she sent five letters to state legislators and state senators referring to "specific incidences with Martin Aponte and his behavior." However, she further testified that she did not have any information about Aponte's raping inmates, but simply accused Aponte of bringing contraband into the prison facili-

ties. In fact, she testified that at the time she wrote the letters, she had no information about sexual contact by Aponte with inmates. Even these letters are not in the record.

[¶ 27.] Clearly, all of the allegations that complaints of sexual contact were made to prison personnel were unsubstantiated and there was no showing that these complaints were communicated to any of the defendants or anyone responsible to report to them.

[¶ 28.] In summary, there was no showing that genuine issues of material fact existed and summary judgment should be affirmed.

KONENKAMP, Justice (concurring in part & concurring specially in part).

[¶ 29.] On Issue 1, I concur with Justice Sabers' special writing to the extent that the plaintiff has failed to show that corrections authorities were aware of any prisoner complaints about the guard's sexual assaults. I concur with the majority on Issue 2.