#24110, #24129-a-RWS
**2007 SD 2**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

BRENDA M. KING, AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF
ASHLEY MARIE KING, A DECEASED
MINOR CHILD, FOR THE BENEFIT OF
THE SURVIVING PARENTS, BRENDA
KING AND ROGER KING,

and

BARBARA V. KING,                                    Plaintiffs and Appellants,

   v.

DENNIS LANDGUTH, Secretary of the
South Dakota Department of
Transportation, in his individual and
official capacities, TOM WEEK, Mitchell
Region Engineer for the South Dakota
Department of Transportation, in his
individual and official capacities, RON S.
PETERSON, Area Engineer for the South
Dakota Department of Transportation, in
his individual and official capacities; and
JOEL GENGLER,  Chief Road Design
Engineer with the Division of Planning and
Engineering for the South Dakota Department
of Transportation,                                   Defendants, Third Party
                                                     Plaintiffs and Appellees,

   v.

JOSHUA ENGEL,                                       Third Party Defendant.

* * * *
APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
TURNER COUNTY, SOUTH DAKOTA
* * * *
HONORABLE LEE D. ANDERSON
Judge
* * * *

ARGUED NOVEMBER 30, 2006
OPINION FILED **01/03/07**

DOUGLAS E. HOFFMAN of
Myers & Billion, LLP
Sioux Falls, South Dakota

and

KENNETH W. COTTON of
Wipf & Cotton, LLC
Wagner, South Dakota                    Attorneys for appellants.

GARY P. THIMSEN
MELANIE L. CARPENTER of
Woods, Fuller, Shultz & Smith, PC
Sioux Falls, South Dakota               Attorneys for appellees.

#24110, #24129

SABERS, Justice

[¶1.]     This action arose from a one car accident in rural Turner County, where Ashley Marie King suffered fatal injuries and Barbara V. King (Barbara) suffered serious but non-fatal injuries, after the driver hit a box culvert in the ditch. Brenda M. King (Brenda), on behalf of Ashley, and Barbara sued the State of South Dakota, the South Dakota Department of Transportation (DOT), and DOT employees. The circuit court dismissed two of King's[1] claims. A jury trial was held regarding the third claim of DOT employees' negligence in failing to maintain the signs. The jury returned a verdict in favor of the DOT employees and King appealed. The DOT employees also submitted two issues for review. We affirm.

## FACTS

[¶2.]     On October 19, 2002, Joshua Engel (Josh), his mother, Debra Engel (Debra), his cousin Ashley, and his grandmother, Barbara, were traveling west from Sioux Falls to Platte on Highway 44. At approximately 6:00 p.m., the car left the west bound lane, crossed the center line, entered the east bound lane and proceeded into the southern ditch. The car was traveling between 65 and 70 mph before leaving the road. According to Josh, he awoke when the car was three-fourths of the way into the oncoming traffic lane, when his mother yelled at him to wake up. He then swerved into the southern ditch (the ditch adjacent to the oncoming traffic lane), to avoid an oncoming vehicle approximately 800 feet ahead.

---

1.     The plaintiffs will be referred to collectively as "King" unless further identification is necessary.

-1-

[¶3.] Josh stated he tried, but was unable, to maneuver the car back onto the road. He then tried to bring the vehicle to a stop in the ditch. Before coming to a stop, the car hit a cement box culvert, approximately 320 feet from where the car entered the ditch. He said he did not see the culvert prior to the accident. According to Josh, had he seen the culvert, he felt he could have avoided it. Barbara suffered severe injuries and was flown to a Sioux Falls hospital. Ashley's injuries were fatal.

[¶4.] King sued the State of South Dakota, the DOT and several DOT individuals.[2] The DOT employees sued the driver of the car, Josh, as a Third Party Defendant. King alleged the DOT employees were negligent in marking the culvert and maintaining the signs.

[¶5.] The court dismissed the claims against the State of South Dakota and the DOT due to sovereign immunity. Likewise, the claims that the DOT employees were negligent in marking the box culvert were dismissed based on sovereign immunity. The DOT's motion to dismiss the claim of negligence in maintaining the

2. The plaintiff sued several DOT employees in their individual and official capacities. They include: Dennis Landguth, Secretary of the DOT; Tom Week, Mitchell Region Engineer for the DOT; Jeff Gustafson, Mitchell Region Operations Engineer for the DOT; Ron S. Peterson, Area Engineer for the DOT; John Cole, Chief Bridge Engineer for the DOT; Tom Gilsrud, Bridge Maintenance Engineer for the DOT; Joel Gengler, Chief Road Design Engineer with the Division of Planning and Engineering for the DOT; and John Does 1-10, being all culpable employees or former employees, officials or former officials, and agents of the DOT individually and in their official capacities. During trial the plaintiffs voluntarily dismissed claims against Jeff Gustafson, John Cole, Tom Gilsrud, and John Does 1-10.

markers was denied and a jury trial was held. The jury found for the DOT employees.

[¶6.] King appeals and raises one issue:

1. Whether the circuit court erred in deciding sovereign immunity bars King's claim of negligence in marking the box culvert on the basis that these actions are discretionary functions.[3]

The DOT employees filed a notice of review raising two issues:

2. Whether, as a matter of law, the proximate cause of the accident was the negligence of Josh Engel.

3. Whether the jury should have been advised that the Kings settled their claims against the driver of the vehicle.

## STANDARD OF REVIEW

[¶7.] The issue presented arises from summary judgment. "Summary judgment is authorized 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'" Krier v. Dell Rapids Township, 2006 SD 10, ¶12, 709 NW2d 841, 844-45 (citing SDCL 15-6-56(c)). We view the evidence "in the light most favorable to the non-moving party." Heib v. Lehrkamp, 2005 SD 98, ¶45, 704 NW2d 875, 890 (Sabers, J., dissenting) (citing Colonial Ins. Co. of California v. Lundquist, 539 NW2d 871, 873). The moving party has the burden of showing there are no genuine issues of material fact. Casillas v. Schubauer, 2006 SD 42, ¶12, 714 NW2d

---

3. King did not appeal the jury verdict or the grant of summary judgment against the State or the DOT.

84, 88 (citing *In re* Estate of Shuck v. Perkins County, 1998 SD 32, ¶6, 577 NW2d 584, 586).

[¶8.] "[S]ummary judgment will only be affirmed if there are no genuine issues of material fact and the legal questions have been decided correctly." Wulf v. Senst, 2003 SD 105, ¶19, 669 NW2d 135, 142 (citing Bego v. Gordon, 407 NW2d 801 (SD 1987)). Whether sovereign immunity precludes a plaintiff from pursuing a claim is question of law which is reviewed de novo. *Id.* No deference is afforded the circuit court's conclusions of law. *Id.* (citing Hansen v. South Dakota Dept. of Transp., 1998 SD 109, ¶7, 584 NW2d 881).

[¶9.] **Whether the circuit court erred in deciding sovereign immunity bars King's claim of negligence in marking the box culvert on the basis that these actions are discretionary functions.**

[¶10.] "The doctrine of sovereign immunity . . . prevents the governing acts of the state, its agencies, other public entities, and their employees from attack in court without the state's consent." *Id.* ¶20 (citing Casazza v. State, 2000 SD 120, ¶11, 616 NW2d 872, 875). State employees are not always protected by sovereign immunity, but it does apply when state employees perform discretionary functions. *Id.* (citing Kruger v. Wilson, 325 NW2d 851, 854 (SD 1982)). It is inapplicable when state employees perform ministerial functions. *Id.*

[¶11.] "State employees are cloaked in sovereign immunity when performing discretionary acts because 'such discretionary acts participate in the state's sovereign policy-making power.'" Kyllo v. Panzer, 535 NW2d 896, 902 (SD 1995) (quoting Ritter v. Johnson, 465 NW2d 196, 198 (SD 1991)). In contrast, "a ministerial act is the simple carrying out of a policy already established . . . so that

permitting state employees to be held liable for negligence in the performance of merely ministerial duties within the scope of their authority does not compromise the sovereignty of the state." *Wulf*, 2003 SD 105, ¶20, 669 NW2d at 143 (citing *Ritter*, 465 NW2d at 198). This Court uses several factors when determining if a state employee's actions are a discretionary rather than ministerial function. They are:

> (1) The nature and importance of the function the officer is performing;
>
> (2) The extent to which passing judgment on the exercise of discretion by the officer will amount necessarily to passing judgment by the court on the conduct of a coordinate branch of government;
>
> (3) The extent to which the imposition of liability would impair the free exercise of his discretion by the officer;
>
> (4) The extent to which the ultimate financial responsibility will fall on the officer;
>
> (5) The likelihood that harm will result to members of the public if the action is taken;
>
> (6) The nature and seriousness of the type of harm that may be produced;
>
> (7) The availability to the injured party of other remedies and other forms of relief.

*Id.* ¶20, 669 NW2d at 142-43 (citing National Bank of South Dakota v. Leir, 325 NW2d 845, 848 (SD 1982)).

[¶12.] In essence, in order for an action to be ministerial the act must be "absolute, certain, and imperative[.]" *Casazza*, 2000 SD 120, ¶13, 616 NW2d at 875 (quoting *Hansen*, 1998 SD 109, ¶23, 584 NW2d at 886). An employee must be "direct[ly] adher[ing] to a governing rule or standard with a compulsory result." *Id.*

¶13, 616 NW2d at 876. "If there is a readily ascertainable standard by which the action . . . may be measured . . . it is not within the discretionary function exception" and therefore, is a ministerial act. *Id.*

[¶13.] The determination of what acts constitute discretionary or ministerial functions requires an individualized inquiry. *Wulf*, 2003 SD 105, ¶21, 669 NW2d at 143. There is no fixed rule to determine whether the employee's action fits into the discretionary rather than ministerial category. *Id.* Instead, we must weigh the consequence immunity has on effective government with the potential harm to individuals. *Id.* To aid in this inquiry, we look at different aspects such as, "the nature of the official's duties, the extent to which the acts involve policy making or the exercise of professional expertise and judgment, and the likely consequences of withholding immunity." *Id.* (citing *Hansen*, 1998 SD 109, ¶23, 584 NW2d at 886) (additional citations omitted)).

[¶14.] Whether sovereign immunity applies to the DOT employees' actions (or inaction) depends on whether the placement of more than two markers at the culvert was a discretionary or ministerial function. King alleges the failure to place four markers on the culvert was negligence and sovereign immunity should not bar their claim because the action was a ministerial function. DOT employees claim the decision whether to put more than two markers at the culvert openings is a discretionary function, thus sovereign immunity would bar King's negligence action.

[¶15.] In support of their claim, King hired expert traffic engineer Dr. William Berg to testify. Dr. Berg testified that the DOT had adopted the Manual on

Uniform Traffic Control Devices (MUTCD)[4] and the American Association of State Highway Traffic Organizations (AASHTO)[5] *Roadside Design Guide*, and, in his opinion, these standards required four markers, one on each corner, in a culvert of this type. Dr. Berg stated this was a clear policy that did not require any discretion. According to Dr. Berg, once the policies were adopted by South Dakota, then the DOT was required to place the Type 2 markers where the policies indicated.

[¶16.]     In support of their assertion that their actions were discretionary, the DOT employees cited the same policies as King. Unlike Dr. Berg's opinion, the DOT employees claim that the South Dakota DOT Policy Letter OT-1999-02, effective March 9, 1999, requires only two Type 2 markers at this culvert. The policy provides, in part:

> The policy standard on roadside markers for box culverts, pipe culverts and cattle passes shall be as follows:
>
> If box culvert, pipe culvert or cattle pass ends are outside the shoulder area, but within the "clear zone" recovery area specified in the AASHTO *Roadside Design Guide*, *install a Type 2 object marker at the opening on the side nearest to approaching traffic.*

OT-1999-02 (emphasis added). Dr. Berg claims this policy requires four Type 2 markers to be installed because traffic can approach the culvert from either side.

---

4.     "The MUTCD approved by the Federal Highway Administration's Department of Transportation is the national standard for all traffic control devices installed on any street, highway or bicycle trail open to public travel." 23 CFR 655.603(a).

5.     AASHTO standards are the engineering and design standards used by the Federal Highway Administration for highways and bridges. *See* 23 CFR 625.4, 650.211, 650.305, 650.313, 650.317, 650.409.

However, the policy clearly states "install *a* Type 2 object marker at the opening on *the* side nearest to approaching traffic." It does not state install Type 2 *markers* at the *openings*. The plain language of the policy cannot be interpreted to require a marker on *both sides*. The DOT employees placed a Type 2 marker on "the side nearest to approaching traffic," and the markers were in compliance with Policy OT-1999-02 at the time of the accident.

[¶17.] King also alleges that the South Dakota DOT Standard Procedures for Resurfacing, Restoration and Rehabilitation of Streets and Highways Other than Freeways (3R Standards), adopted in 1990, and Chapter 3C of the MUTCD require four markers at this culvert. However, the MUTCD only provides that, "Type 2 or Type 3 markers *may* be used at this type of location." *See* Chapter 3C Object Markers Section 3C.03. Moreover, King claims AASHTO Roadside Design Guide requires four Type 2 markers for objects in the "clear zone"[6] for either adjacent or opposing traffic. Accordingly, King's argument is an object in the ditch must be marked for traffic entering the ditch even from the opposite lane. This argument fails to consider the plain language of Policy OT-1999-02, which only requires a

---

6.   The DOT website defines the "clear zone" as:

> The total roadside border area, starting at the edge of the traveled way available for the safe use by errant vehicles. The clear zone area may consist of an auxiliary lane (low speed), a shoulder, a recoverable slope, a nonrecoverable slope and/or clear run-out area.

Road Design Manual, Chapter 10, *located at* www.sddot.com (last viewed on December 28, 2006). The width is determined by traffic volumes and speeds and the roadside geometry. *See id.*

marker on "the side nearest to approaching traffic." It also discounts the fact AASHTO never specifically provides for the use of four Type 2 markers.

[¶18.] King urges this Court to find this case is similar to the decision in *Wulf*. 2003 SD 105, ¶32, 669 NW2d at 146-47. In *Wulf*, the DOT had a clear policy in effect that required sanding and scraping of icy roads between 5:00 a.m. and 7:00 p.m. unless the conditions were too hazardous. *Id*. ¶12 n2. The snow removal stopped at 8:00 p.m. and did not resume until 8:00 a.m. the next day. *Id*. ¶7. At 7:30 a.m., Wulf was involved in an accident on a road where the snow/ice removal policy was not followed. *Id*. ¶2. We reversed summary judgment noting the ice/snow removal policy was a clear policy that the employees did not have discretion to ignore. *Id*. ¶32. In doing so we noted, "once it is determined that the act should be performed, subsequent duties may be considered ministerial." *Id*. (quoting *Hansen*, 1998 SD 109, ¶23, 584 NW2d at 886) (additional citations omitted).

[¶19.] The facts in *Wulf* are materially distinguishable from this case. In *Wulf* there was a clear policy requiring snow/ice removal at certain hours that the employees failed to follow. In this case the markers were in compliance with Policy OT-1999-02, as the culvert was marked with "*a* Type 2 object marker at the opening on *the* side nearest to approaching traffic." The AASHTO does not specifically require four Type 2 markers. The new MUTCD and 3R Standards do not require the use of Type 2 markers as it states the object "may" be marked with Type 2 markers. No policy requires more markers at this culvert. Unlike *Wulf*, it cannot be said that this case involves a clear, "readily ascertainable standard by which the

government servant may be measured . . . ." 2003 SD 105, ¶26, 669 NW2d at 145. The decision to install additional markers beyond what Policy OT-1999-02 provides is discretionary.

[¶20.]     Instead, this case is similar to *Hansen*.[7] 1998 SD 109, ¶33, 584 NW2d at 889. In *Hansen*, the plaintiff argued that Howard, the Director of Highways, breached his duty to warn of dangerous road conditions when she was injured after her car entered a large hole in the road due to construction. *Id.* ¶2. The statute required a guard over road damage or defects caused "by flood, fire or other cause . . . ." *Id.* ¶26. Hansen argued the hole in the road due to road construction qualified as "other cause" and required a guard to warn of the danger. *Id.* However, this Court affirmed the circuit court's dismissal of the case because "other cause" language in the statute did not provide a "readily ascertainable standard." *Id.* ¶¶29, 35.

[¶21.]     In the same vein, the DOT employees' actions were not ministerial because at the time of the accident there was not a "readily ascertainable standard." Any decision regarding the installation of additional markers at this culvert was a discretionary function. The circuit court's grant of summary judgment has not been

---

7.     *Hansen* was a 4-1 decision where I dissented on the basis that 1) SDCL 31-5-1 created a clear statutory duty to inspect, maintain and repair the interstate bridges, 1998 SD 109, ¶¶41-43; 2) the defendant did "not challenge settled South Dakota law that the obligation to erect a sign and guard over a defect in the road constitutes a ministerial duty . . . ." *Id.* ¶43; and 3) whether the hole in the interstate bridge which was created by the construction crew constituted a defect which caused the road to become "out of repair" was a fact question for a jury. *Id.* ¶43 n14. The present case does not involve the "duty to repair" road statute. Instead, King bases her claim solely on her interpretation of the DOT's object marking policies.

shown to be improper as sovereign immunity bars King's negligence claim against the DOT employees.

[¶22.] We affirm.[8]

[¶23.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.

---

8. Due to our decision in Issue 1, we need not reach Issues 2 and 3.